447 So.2d 629 (1984)
Mary Lou Shackman, wife of/and Joseph SHACKMAN
v.
Shelly DAIGLE, Liberty Mutual Insurance Company and State Farm Mutual Automobile Insurance Company.
No. CA-1236.
Court of Appeal of Louisiana, Fourth Circuit.
March 14, 1984.
Trudy H. Oppenheim, New Orleans, for plaintiff-appellant.
Victor A. Dubuclet, III, Borrello & Huber, Metairie, for defendant-appellee.
Before KLEES, BYRNES and WILLIAMS, JJ.
WILLIAMS, Judge.
Plaintiff, Mary Lou Shackman, appeals a trial court judgment awarding her $3,000.00 general damages and $626.00 medical expenses for injuries sustained in an automobile accident involving defendant Shelly Daigle.
Plaintiff alleges the trial court erred in refusing to allow any testimony concerning loss of future wages by plaintiff's vocational rehabilitation expert.
*630 On March 28, 1979, while plaintiff was stopped at a yield sign waiting to enter Jefferson Highway, defendant ran into her from behind. Thus began a series of medical consultations for plaintiff's complaints of injury to the neck and back.
Plaintiff, 43 years of age, had returned to school after having raised a family and was finishing her sophomore year at Loyola University when the accident occurred. She alleged that her neck injuries made it impossible to read, write, type and even sit in class for any period of time without great pain, and that she was forced to withdraw from the University for that reason. She contended that her injuries made it impossible for her ever to become a psychiatric nurse, the goal she had set for herself before the accident. Plaintiff prayed for the difference between her present wages and the amount she would have earned had she attained employment as a psychiatric nurse after graduating in Spring of 1982, a date she targeted based on full-time summer, fall and spring semester attendance. Plaintiff introduced an expert witness in vocational rehabilitation who testified, based upon a personal consultation with plaintiff, how much future wages she would have lost since Spring of 1982. The trial court, however, excluded the rehabilitation expert's testimony from the jury's deliberation. Plaintiff alleges that this was error in that her disability was proven such that the question of future wages should have gone to the jury.
The court in Boatner v. McCrory Corp., 341 So.2d 1174 (La.App. 1st Cir.1977), citing Billiot v. Bourg, 338 So.2d 1148 (La. 1976), noted:
When as here the evidence is conflicting, an appellate court should not disturb reasonable evaluation by the trier of fact of one set of witnesses as credible, and its rejection of the testimony of the opposing set of witnesses; nor should the reviewing court disturb reasonable factual inferences drawn by the trier of fact from such testimony found by it to be credible.
Plaintiff testified that her alleged neck trouble forced her to reduce her usual courseload over the year following the accident with defendant until she quit school entirely after the spring semester of 1980. Plaintiff admitted, however, that she continued part time employment as manager of her apartment complex. She also admitted to two subsequent occasions in which she had been stopped at the same yield sign and had been run into from the rear by another automobile. Plaintiff insisted that these were mere "taps" and had had no effect on the physical condition caused by defendant's accident. Plaintiff further testified that the reason she had not returned to school at the time of trial was that she was recovering from a hysterectomy which she underwent after diagnosis of a tumor.
Discrepancies between plaintiff's testimony and that of plaintiff's lay witnesses were numerous. Plaintiff's husband testified that he felt his wife's injuries had "pretty much gone away". While plaintiff testified she was driving her Cadillac when the accident with defendant occurred, plaintiff's daughter testified plaintiff was in their small Volkswagenthe automobile plaintiff testified to having driven in the later accidents she had dismissed as mere "taps". Plaintiff's friend, Elizabeth Murray, testified that she saw plaintiff every day during 1979, yet remembered only the March 28 accident and neither of the two later ones. She said she had discussed the accident over dinner with plaintiff the night before trial and also that very morning. Leslie Davis, who had been driving with plaintiff during the March 28 accident and one of the later accidents testified that the March 28 accident had been more severe than the April 12 accident. She insisted that there was no reason to know why plaintiff would have told her doctors that her body flopped back and forth in the April 12.
Dr. Williams, the first doctor plaintiff consulted, testified that within three months of the accident he found plaintiff to have recovered normal neck motion, and was told by plaintiff that she felt she could *631 continue her regular activities. He added, in direct contradiction to the testimony of plaintiff and plaintiff's friend, Leslie Davis, that plaintiff had described the April 12 accident to him as having enough force "to flop her body back and forth." Dr. Cook felt, even on plaintiff's first visit to her, that plaintiff's ability to type or read was not restricted because her difficulty lay in extending her neck backwards, not flexing it forward. The electromyograms she conducted on plaintiff yielded normal results. Dr. Terezekias testified that she could treat plaintiff only symptomaticallyin response to plaintiff's complaintsbecause she could not find any observable evidence of injury. Plaintiff's family physician, Dr. Gaines, never once was told of any neck or back complaint during any of plaintiff's fairly regular visits to him after the accident. Defendant in turn had plaintiff examined by Drs. Soboloff and Levy who both felt plaintiff had a full range of motion in her neck, save perhaps for a slight limitation toward the left which they did not feel was disabling. Dr. Levy, a neurosurgeon, found no basis for neurological defect.
We find the trial court reasonably evaluated medical testimony as refuting plaintiff's claims of disability. Although plaintiff alleged error in the trial court's refusal to consider that the testimony of plaintiff and her lay witnesses established sufficient predicate for a claim for loss of future wages, we find no abuse of discretion in the trial court's low estimation of the testimony of plaintiff's husband, daughter, and two friends.
What plaintiff sought to introduce was the testimony of a man who had merely spoken in an office with her for one and one-half hours. He had examined none of plaintiff's medical reports; he was not a doctor himself. He computed plaintiff's damages on the hypothesis that but for the March 28, 1979, accident, plaintiff would have continued through school full-time in fall, spring and summer to graduate in spring 1982 and successfully assume her desired career. He was completely unaware, however, of the intervening hysterectomy which kept plaintiff out of school regardless of any auto accidents. Moreover, his projection of future earnings assumed that the career goal expressed to him by a college sophomore would become a physical reality. Mr. Roberts's plotting of plaintiff's future was too speculative for us to consider, and, even had disability been proven, would have provided no basis for a claim for future wages.
After careful review of the record, we can find nothing which would indicate that the trial court's decision to exclude the testimony of plaintiff's vocational rehabilitation expert was manifestly erroneous. Canter v. Koehring, 283 So.2d 716 (La. 1973).
For the foregoing reasons, the decision of the trial court is AFFIRMED.
AFFIRMED.