512 So.2d 507 (1987)
Edward PAIGE, Jr., et ux., Plaintiffs-Appellants,
v.
COMMERCIAL UNION INSURANCE COMPANY, et al., Defendants-Appellees.
No. 86-608.
Court of Appeal of Louisiana, Third Circuit.
June 26, 1987.
Writ Denied October 16, 1987.
*508 Thomas and Dunahoe, Edwin Dunahoe, Natchitoches, for plaintiffs-appellants.
Ronald E. Corkern, of Watson, Murchison, Crews, Arthur & Corkern, Natchitoches, John W. King, Baton Rouge, Wilson and Walker, Alonzo P. Wilson, Alexandria, for defendants-appellees.
Joe Walker, in pro. per.
Before DOMENGEAUX, LABORDE and YELVERTON, JJ.
LABORDE, Judge.
This case is one of three suits consolidated for trial. The cases remain consolidated on appeal, and we this day render separate opinions in the consolidated cases entitled Walker v. Commercial Union Insurance Company, 512 So.2d 513 (La.App. 3d Cir. 1987), and Commercial Union Insurance Company v. Walker, 512 So.2d 514 (La. App. 3d Cir.1987).
These cases arise out of a two-car accident which occurred at the intersection of *509 Louisiana Highway 1 and Woodyard Drive in Natchitoches Parish. Highway 1 is a north-south highway running through the City of Natchitoches. The DOTD is responsible for maintaining Highway 1. Highway 1 enjoys the right of way and traffic entering it from the east or west from Woodyard Drive is controlled by stop signs. Traveling south on Highway 1, an individual would cross the Cane River bridge immediately prior to reaching Woodyard Drive.
The accident involved a Natchitoches Parish Sheriff's Department vehicle driven by Deputy Leonard Jones with Deputy E.T. Grayson as a front seat passenger. The other vehicle was driven by Joe Walker, Jr. with John Edward Paige as a front seat passenger. Prior to the accident, Deputies Jones and Grayson, functioning in their capacities as employees of the Natchitoches Parish Sheriff's Department, were proceeding south on Highway 1 responding to an emergency call. According to testimony of Jones, they were traveling at a speed between 45 and 55 miles per hour with sirens sounding and lights flashing. At the same time, the vehicle driven by Joe Walker, Jr. was proceeding east on Woodyard Drive. The accident occurred when the vehicle driven by Joe Walker, Jr. allegedly ran the stop sign and proceeded into the path of the vehicle driven by Jones. The four occupants of the two vehicles involved in the collision were taken to the Natchitoches Parish Hospital. Paige later died as a result of injuries sustained in this mishap. Jones, Jackson and Grayson were hospitalized as a result of their injuries and later released.
Edward Paige, Jr., and his wife, Magnolia Paige, as surviving parents of John Edward Paige, filed a tort action against Commercial Union Insurance Company (Commercial), Leonard Jones, and Joe Walker, Jr. The Paiges alleged the negligence of Leonard Jones and Joe Walker, Jr. caused the injury and resulting death of their son, John Edward Paige. The Paiges also sought recovery from Commercial on the basis of an insurance policy issued by Commercial to the Natchitoches Parish Sheriff's Department providing coverage on the vehicle driven by Deputy Leonard Jones. Joe Walker, Jr. was uninsured.
Joe Walker, Jr. filed suit against Commercial and Leonard Jones. Walker alleged the negligence of Leonard Jones caused his injuries. Walker also sought recovery based on the aforementioned insurance policy issued to the Natchitoches Parish Sheriff's Department.
Commercial filed suit against Joe Walker, Jr. and the State of Louisiana, through the Department of Transportation and Development (DOTD). Commercial alleged the joint and concurrent negligence of Joe Walker, Jr. and DOTD as the sole and proximate cause of the accident.
In the Paige suit, Commercial and Leonard Jones filed an answer, denying any liability and alleging the sole and proximate cause of the accident to be the negligence of Joe Walker, Jr. The Paiges then filed an amended and supplemental petition naming as additional parties the DOTD and the City of Natchitoches. Plaintiffs alleged the negligence of the City of Natchitoches and the DOTD in failing to maintain and control this dangerous intersection. Commercial and Leonard Jones filed third party demands against Joe Walker, Jr. and DOTD. The City of Natchitoches answered the Paiges' amended and supplemental petition, denying liability and assigning the negligence of Joe Walker, Jr. as the sole proximate cause of the accident.
DOTD, in answering the suits by the Paiges and Joe Walker, denied liability and pled the fault of third parties, specifically Leonard Jones, Joe Walker, Jr., City of Natchitoches, Natchitoches Parish Sheriff's Office and Commercial. Commercial further pled the affirmative defense of assumption of the risk on the part of John Edward Paige.
An Exception of No Right of Action was filed by DOTD in connection with the suit filed by Commercial. The trial court denied the exception.
At trial, after plaintiffs presented their evidence, the attorney representing the City of Natchitoches requested and was granted a directed verdict. After trial on *510 the merits, the trial court found that Joe Walker, Jr. was solely responsible for the accident. The demands of the plaintiffs against Joe Walker, Jr. were denied on the basis that the decedent assumed the risk of injury or death when he intoxicated himself and voluntarily became a passenger in the Walker automobile at a time when he knew or should have known that Walker's driving ability would be impaired due to the influence of alcoholic beverages. The court further found that the DOTD was negligent in their treatment of the intersection, but concluded that there was no causal connection between DOTD's negligence and the death of John Paige. All claims against Commercial, Leonard Jones, and DOTD were dismissed. Judgment was rendered against Joe Jackson, Jr., in the amount of $13,416.35 to indemnify Commercial for payments to Leonard Jones and E.T. Grayson. The Paiges have devolutively appealed the judgments denying them recovery.
On appeal, plaintiffs divide their brief into four areas in which they feel the court manifestly erred. The first three areas involve whether there is a causal connection between the negligence of DOTD, Leonard Jones, Joe Walker, Jr., and the death of John Paige. In their last area plaintiffs argue that the trial court manifestly erred in determining that John Paige assumed the risk of his injuries when he rode with Joe Walker, Jr.

CAUSATION
Plaintiffs argue that the trial court erred in not finding a causal connection between the negligence of DOTD and the death of John Paige. Plaintiffs contend that the defective condition at the intersection is one in which the state is strictly responsible. Plaintiffs argue that sight restrictions imposed by the bridge railing constituted a defect posing an unreasonable risk of harm, thereby contributing to the cause of the accident. Plaintiffs then conclude that since the defect contributed to the accident, DOTD was solidarily liable with all other negligent defendants.
The Department of Highways is not a guarantor of the safety of all traveling motorists, but owes a duty to keep the highways and its shoulders reasonably safe for non-negligent motorists. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980). There must also be a causal relationship between any alleged wrongful conduct or breach of said duty and the resulting harm before liability can attach. Mixon v. Allstate Insurance Company, 300 So.2d 232 (La.App. 2d Cir.), writ denied, 303 So.2d 179 (La. 1974). In order for negligent conduct to be a cause-in-fact of harm to another, it must be a substantial factor in bringing about that harm. Dixie Drive It Yourself System v. American Beverage Co, 242 La. 471,137 So.2d 298 (1962). The facts of this accident do not reveal a non-negligent motorist, nor do they show any act or omission on the part of the DOTD, whether sounding in negligence (La.C.C. 2315) or strict liability (La.C.C. 2317), which played a substantial role in causing this accident. The facts surrounding this accident clearly support a finding that this accident was not caused by any negligence on the part of the DOTD.
A motorist is under a duty to drive prudently, this includes the duty to control his vehicle and to keep a proper lookout. Hebert v. Lefty's Moving Service, 389 So.2d 855 (La.App. 4th Cir.1980); Courtney v. Lambert Const. Co., Inc., 355 So.2d 72 (La.App. 1st Cir.), writ denied, 356 So.2d 430 (La.1978).
Without having to approve of the trial court's finding that DOTD was negligent, we find that the sight restrictions imposed by the bridge railing on Highway 1 was not a cause in fact of the accident. Walker testified by deposition that he and John Paige were driving around Natchitoches with no particular destination in mind. Upon reaching the intersection of Woodyard Drive and Highway 1, Walker stated that he downshifted to second and came to a complete stop at the intersection. Walker testified that prior to pulling out into the intersection he looked twice to the north and twice to the south. Walker stated that he was sitting low in his seat, but *511 could see over the rail from one end of the bridge to the other. Walker also testified that he could see along the roadway in a northerly direction. Walker stated that after not seeing any cars to the north or south on Highway 1, he proceeded to make a left hand turn onto Highway 1. After entering the intersection, Walker testified that he shifted from first to second gear and came to a complete stop in the northbound lane of Highway 1. When questioned as to why he came to a complete stop, Walker stated that he could not see because of a "big bright light," evidently the lights from the sheriff's vehicle, shining in his eyes.
Walker's testimony is contrary to that given by the two sheriff deputies. Deputy Grayson, riding as a passenger with Deputy Jones, testified that as they almost got to the end of the bridge, he stated to Deputy Jones that he did not think the vehicle coming from Woodyard Drive was going to stop. Grayson testified that before he could complete the above sentence, the accident had occurred.
In discussing the testimony of the two sheriff deputies involved in the accident, the trial court reasoned, in pertinent part, as follows:
"The Sheriff's unit was proceeding in a southerly direction in a safe manner on La. 1 and the driver and passenger observed the Walker vehicle approach from the west on Woodyard and assumed it would stop in compliance with the traffic control. The Walker vehicle was travelling at a speed which would have permitted it to stop. However, when Walker reached the intersection he applied his brakes causing the deputies to note the front end of his vehicle dip as if coming to a stop, but he only slowed and didn't stop; he continued into the intersection. By the time the deputy realized Walker was not going to stop it was too late for him to take the necessary evasive action to avoid a collision."
It is well settled that a motorist traveling on a favored street has a right to assume that any driver approaching the intersection on a less favored street will observe existing traffic signal and stop before proceeding through the intersection. Messina v. Bowen, 415 So.2d 351 (La.App. 4th Cir.), writ denied, 420 So.2d 170 (La.1982).
Concerning the evidence of Walker's intoxication, we find additional evidence in the record supporting the conclusion that the accident was caused solely and proximately by Walker's negligence and inattention. Walker testified by deposition that prior to meeting Paige at a friend's house, he had two beers with supper. After the accident, a blood sample was drawn from Walker and later processed at a lab to determine Walker's blood alcohol content. Nell Spurlock, an assistant laboratory director for Monroe Diagnostic Laboratories, performed the analysis and testified that her records indicate that Doctor Sills at Natchitoches Parish Hospital requested the blood alcohol analysis on Joe Walker. Spurlock stated that the test results indicated a blood alcohol level of .107 per cent.
In Parker v. Kroger's Inc., 394 So.2d 1178, 1179 n. 3 (La.1981), the Louisiana Supreme Supreme Court stated:
"La.R.S. 32:662 creates a presumption that a person was under the influence of alcoholic beverages if at that time 0.10 percent or more by weight of alcohol was in his blood. Although this presumption is inapplicable in civil actions, it in no way prevents a civil litigant from introducing into evidence a person's blood alcohol content and testimony of competent expert witnesses to interpret the effects of such a level on a person's ability to operate a motor vehicle." (citations omitted)
In written reasons, the trial judge addressed the matter of alcohol consumption and its effects on Walker as follows:
"Mr. Walker was under the influence of alcohol to a degree which was scientifically measured as 0.107 ... and Mr. Paige, the decedent, was likewise under the influence of alcohol...."
. . . . .
"The unfortunate death of Mr. Paige was caused solely and proximately by the negligence and inattention of Joe Walker, *512 Jr., secondary to his self-induced intoxication."
The testimony of Spurlock regarding Walker's blood alcohol level is sufficient for the trial judge to make a factual determination that this accident was alcohol-related. This evidence, along with all other evidence presented was sufficient for the trial judge to conclude that the sole proximate cause of the accident was the negligence and inattention of Joe Walker influenced by alcohol. The level of alcohol in Walker's blood was just one factor which the trial judge took into consideration in making his factual determinations. This evidence, combined with all other evidence presented, convinces us that the trial judge was not manifestly wrong in his determination. Great weight is given the findings of the trial court, and only where its findings are clearly wrong will they be reversed.
The Paiges argue that Leonard Jones, Joe Walker, and the DOTD are concurrently at fault in causing the accident. The Paiges attempt to create a presumption of negligence on the drivers involved which must be disproved.
Because we have previously determined that the trial judge was not manifestly erroneous in finding that the sole proximate cause of this accident was the negligence and inattention of Joe Walker, Jr., secondary to his self-induced intoxication, a further discussion of causal connection is unnecessary and not warranted.

ASSUMPTION OF RISK
The Paiges contend that the record is completely devoid of evidence that John Edward Paige knew or should have known of Walker's intoxication and thus assumed the risk of riding with him.
The law is well settled that a guest passenger riding with a driver who has been drinking excessively assumes the risk of injuries received in an accident caused in whole or in part by the driver's negligence, if the alcohol-induced impairment of the driver's ability is a substantial contributory cause of the driver's negligence and if the guest passenger knows or should have known of the driver's condition and nevertheless voluntarily rides with him. Prestenbach v. Sentry Insurance Co., 340 So.2d 1331 (La.1976); Marcotte v. Travelers Insurance Co., 258 La. 989, 249 So.2d 105 (1971); Jones v. Continental Casualty Co., 246 La. 921, 169 So.2d 50 (1964).
A defendant who pleads contributory negligence or assumption of the risk must bear the burden of proving it. La.C.C.P. art. 1005. In the instant case, Commercial must prove by a preponderance of the evidence that: 1) the driver was intoxicated; 2) his intoxication was a cause of the accident; and, 3) the guest passengers knew or should have known of the driver's condition. Proof by a preponderance of the evidence simply means that, taking the evidence as a whole, such proof shows that the fact or cause sought to be proved is more probable than not. See Prestenbach v. Sentry Insurance Co., 340 So.2d at 1334.
Testimony we have regarding John Paige's alcohol consumption contained in the deposition of Walker states that Walker was not aware that Paige drank, that he was not drinking when he met Paige at a friend's house, and that they were not drinking as they left the friend's house to drive around town. John Paige's father testified that John never drank in his presence. Leonard Jones testified that he saw John Paige drinking on the day of the accident at a basketball game in Natchez, Louisiana. The only written evidence we have that indicates that Paige had been drinking that night was a notation in the medical records that Paige was "oriented to name, but intoxicated." The defendants have presented no evidence that Paige had knowledge of Walker's intoxicated condition or that, from his personal observations of Walker's prior activities, he should reasonably have known of this condition. The trial court's factual determination that John Paige assumed the risk of injury is manifestly wrong.

DAMAGES
John Paige lived approximately six hours after the accident. The evidence shows that he was semi-conscious most of *513 the time and in considerable pain. The plaintiffs suggest that an award of $50,000 would be appropriate for the pain and suffering of John Paige. The plaintiffs also suggest that they each be awarded $150,000 for the loss of their son. Both testified that they had suffered substantially from the loss of John. Neither parent was dependant upon John for support even though he did contribute at times to the support of his mother by working part time as a farm laborer.
For the wrongful death of John Paige caused by the negligence and inattention of Joe Walker, Jr., we render judgment in the amount of $50,000 in favor of Edward Paige, Jr., and Magnolia Paige.

DECREE
For the above and foregoing reasons, the judgment appealed from is affirmed in part, reversed in part, and recast as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Leonard Jones, Commercial Union Insurance Company, and the State of Louisiana, through the Department of Transportation and Development, dismissing with full prejudice all claims, causes of action and demands asserted by original plaintiffs, Edward Paige, Jr. and Magnolia S. Paige against the defendants set forth above.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of original plaintiffs Edward Paige, Jr. and Magnolia S. Paige and against Joe Walker, Jr., in and for the full sum of Fifty Thousand and 00/100($50,000.00)Dollars, together with legal interest thereon from date of judicial demand until paid. In all other respects the judgment of the trial court is affirmed. Costs of this appeal are taxed to Joe Walker, Jr.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.