540 So.2d 577 (1989)
Chris G. MOLBERT, Oscar G. Molbert Sr., Mrs. Oscar Molbert, Sr., & Louisiana Health Service & Indemnity Company (Blue Cross) (Intervenor), Plaintiffs-Appellants,
v.
Arthur D. TOEPFER, Allstate Insurance Company (Dismissed 03/11/85), Department of Transportation and Development, State of Louisiana, City of Lafayette & Continental Insurance Company, Defendants-Appellants (Toepfer & State of La. through Dept.), Defendants-Appellees.
No. 87-1382.
Court of Appeal of Louisiana, Third Circuit.
March 15, 1989.
Writ Granted May 26, 1989.
*578 Gibbens & Blackwell, John Blackwell, New Iberia, Sonnier & Hebert, Paul J. Hebert, Abbeville, for plaintiffs-appellants.
*579 Robert J. Adams, Norman L. Sisson, Sharon F. Lyles, Lafayette, for defendants-appellants.
Allen, Gooch, Aaron J. Allen, Voorhies & Labbe, E. Gregory Voorhies, Lafayette, for defendants-appellees.
Before GUIDRY, LABORDE and KING, JJ.
LABORDE, Judge.
Plaintiffs, Chris Molbert and his parents, filed suit against Arthur D. Toepfer seeking to recover damages for injuries Chris sustained as a guest passenger in a car driven by Toepfer that crashed into a utility pole in Lafayette. Plaintiffs also sued Allstate Insurance Company (Allstate), Toepfer's UM carrier, and the Louisiana Department of Transportation & Development (DOTD), claiming that it negligently designed and maintained the highway where the accident occurred. DOTD subsequently filed a third party demand against Continental Insurance Company, Toepfer's liability insurer, and against the City of Lafayette (the City) claiming that it was responsible for maintaining the highway. Blue Cross of Louisiana (Blue Cross) intervened in the matter seeking to recover medical expenses that it paid on behalf of Chris Molbert. Allstate was later dismissed from the matter. Plaintiffs also amended their claim to name the City as a direct defendant.
Trial was held and the trial court awarded plaintiffs damages totalling $1,250,000.00. Of this amount, Blue Cross received $102,485.33 on its intervention claim. The court apportioned fault to Toepfer at 95% and to DOTD at 5%. Toepfer now appeals claiming that DOTD should have been assigned a higher degree of fault. DOTD appeals claiming that it should not have been apportioned with any fault and/or that its percentage of fault should have been assigned to the City; that Chris Molbert should have been attributed with some degree of fault; and that the damages awarded were excessive. Plaintiffs also appeal, claiming that DOTD should have been assigned a higher degree of fault; that the damages awarded were inadequate; and that the trial court should not have assessed all court costs to Toepfer. We affirm the trial court's decision.

FACTS
On March 2, 1984, at about 2:00 a.m., Chris Molbert and Arthur Toepfer left "Sugar's" Lounge in Lafayette. Toepfer drove and Chris Molbert was the sole passenger in Tolbert's 1972 Triumph. The two headed north on Northeast Evangeline Thruway. Immediately before the intersection of the Thruway with Simcoe Street, Toepfer failed to properly negotiate an "S" curve. His vehicle struck the utility and traffic light poles at the intersection. As a result of the accident Chris Molbert suffered severe injuries including brain damage. Toepfer apparently was not seriously injured.

FAULT OF DOTD
It is undisputed that Toepfer was at fault in causing the accident. Toepfer and Chris Molbert had been drinking at "Sugar's" Lounge prior to the accident. Toepfer's vehicle was also apparently seen running red lights and stop signs immediately prior to the accident. He then failed to negotiate a curve on Evangeline Thruway and crashed into a utility pole at its intersection with Simcoe. After the accident, Toepfer was found to have a blood alcohol content of .13%. Chris Molbert had a blood alcohol content of .07%.[1]
There was much testimony at trial concerning the design and maintenance of the curve where the accident occurred. It was determined that the curve was inadvertently constructed with a higher degree of curvature than the plans for its design called for. The speed limit for Evangeline *580 Thruway is 35 M.P.H. and there is no reduced speed limit for the curve in question. Chevrons or curve signs are located at the beginning of the curve. Although the speed limit is 35 M.P.H., testimony indicated that the design speed is 27 M.P.H. and a "Ball Bank Indicator" test found the "comfort speed" for the curve to be 25 M.P.H. Robert Stoute lived in a house located at the intersection. He testified that a barricade was erected near the house in 1981 because the house had twice been hit by cars northbound on Evangeline Thruway. This barricade has been hit by cars five times since 1981.
After considering the extensive expert testimony presented at trial, the trial court found that the design and maintenance of the curve was faulty. The court noted that the consensus of the experts was that the curve was not properly designed and that a 25 M.P.H. advisory speed limit should have been posted for the curve. Based upon our review of the record we do not find the trial court's determination to be manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
DOTD asserts that under a road maintenance agreement, the City should be held liable for any maintenance problems of the curve on Evangeline Thruway. DOTD points out that the contract involved provides that the City maintain the signs and traffic signals on Evangeline Thruway and that the City will hold DOTD harmless for any negligence claims based upon improper maintenance of Evangeline Thruway. The evidence presented at trial indicated that DOTD designed and built the highway in question; that it owns that highway; and that it set the speed limit for the highway after doing a study. Based upon its determination that the highway curve was defectively designed and that the curve should have had a 25 M.P.H. advisory speed limit, the trial court concluded that the problems with the curve were solely the fault of DOTD and in no way attributable to the City. Again, we do not find this determination by the trial court to be manifestly erroneous.
DOTD also contends that some degree of contributory negligence should have been attributed to Chris Molbert. It argues that Chris Molbert did not properly exercise a reasonable degree of care and caution in riding as a guest passenger in Toepfer's automobile. Toepfer was intoxicated and driving recklessly and Chris Molbert should have been aware of it.
In Paige v. Commercial Union Insurance Company, 512 So.2d 507, 512 (La. App.3d Cir.), writ denied, 513 So.2d 823 (La.1987), this court discussed the applicable law where a guest passenger is injured while riding in an automobile with a drunken driver. We stated:
"The law is well settled that a guest passenger riding with a driver who has been drinking excessively assumes the risk of injuries received in an accident caused in whole or in part by the driver's negligence, if the alcohol-induced impairment of the driver's ability is a substantial contributory cause of the driver's negligence and if the guest passenger knows or should have known of the driver's condition and nevertheless voluntarily rides with him."
We further stated that the defendant has the burden of proving by a preponderance of the evidence that: (1) the driver was intoxicated; (2) his intoxication was a cause of the accident; and, (3) the guest passenger knew or should have known of the driver's condition.
In the present matter it is undisputed that the first two elements of proof were met. However, Chris Molbert's knowledge of Toepfer's condition is less certain. The two had been drinking at "Sugar's" together. Toepfer's blood alcohol content was above the legal intoxication level, but Chris Molbert's was not. Witnesses who saw the two together at the bar testified that they were not acting unusual. Toepfer did apparently drive recklessly, but it is questionable whether or not Chris Molbert had the time or opportunity to attempt to extricate himself from the situation.[2] The trial court *581 considered all of the relevant testimony and determined that Chris Molbert was not unreasonable in riding as a guest passenger in the Toepfer automobile and that he was not contributorily negligent. Again, we do not find that this determination was manifestly erroneous. We thus hold that the trial court's apportionment of fault to Toepfer at 95% and to DOTD at 5% was correct.

DAMAGES
The trial court awarded the following damages:

Past and future pain,
suffering, anguish, disability,
scarring, disfigurement,
humiliation
and anxiety $ 150,000.00
Past, present, and future
medical expenses 300,000.00
Loss of earnings 600,000.00
Oscar Molbertloss of
consortium 100,000.00
Mrs. Oscar Molbert
loss of consortium 100,000.00
 _____________
 Total damages
awarded $1,250,000.00

DOTD appeals these awards claiming that they are excessive and should be reduced. Plaintiffs, on the other hand, contend that the awards are inadequate and should be increased.
Much of the voluminous record in this case deals with Chris Molbert's physical and mental condition, past and present. Prior to the accident, Chris Molbert was attending the University of Southwestern Louisiana, majoring in Mechanical Engineering. He was apparently an average student and also worked for his father doing construction work. Among the first persons to arrive at the scene of the accident was Dudley Darbonne, a respiratory therapist. At the time, Chris Molbert had no pulse and was not breathing. Darbonne performed CPR. Chris Molbert suffered a severe closed head injury which caused permanent brain damage. He was in a coma for one month. Numerous doctors and therapists testified concerning Chris Molbert's condition. The essence of their testimony was that Chris Molbert suffered very much physically; will never be able to live the normal active life that he once lived; needs almost constant care and supervision; and will probably never be able to seek employment. His father described him as a 28 year old with the mentality of a 7 or 8 year old.
In order to disturb the award of damages made by the trial court, the record must clearly reveal that the trial court abused its discretion in making the award. Thompson v. Colony Insurance Company, 520 So.2d 1158, 1161 (La.App.3d Cir.1987). As to the award for past and future pain and suffering, we do not feel that the trial court abused its discretion. Chris Molbert was awarded $300,000.00 in past and future medical expenses. At the time of trial his medical expenses totalled $168,000.00. It is readily apparent from the record that he will incur much more medical and therapeutic treatment in the future. We do not find the $132,000.00 award for future medical expenses to be excessive.
The trial court awarded Chris Molbert $600,000.00 for loss of earnings. The only expert to testify concerning loss of earnings was Don Cornwell, a consulting economist. He projected that if Chris Molbert had worked as a mechanical engineer, he would have suffered an economic loss ranging from $726,203.00 to $1,077,683.00. Mr. Cornwell's testimony was uncontroverted. However, the trial court reduced the award for loss of earnings to $600,000.00. The Molberts argue that since the testimony was uncontroverted, the award should not have been reduced by the trial court. See Vanzant v. New Orleans Public Service, Inc., 517 So.2d 1252 (La. App.4th Cir.1987), writ denied, 519 So.2d 131 (La.1988). However, Chris Molbert had not yet earned a degree, nor had he obtained employment as a mechanical engineer. Thus, we find that the trial court's *582 reduction of the award to $600,000.00 was warranted.
DOTD next argues that the award of $100,000.00 each to Mr. and Mrs. Molbert for loss of consortium is inappropriate. DOTD contends that there is no legal basis for these awards. We do not agree. Under LSA-C.C. art. 2315, damages for loss of consortium are recoverable by the same categories of persons who would have a cause of action for wrongful death. LSA-C.C. art. 2315.1 allows the father or mother to recover when their child is not survived by his own spouse or child. In the present case, Mr. and Mrs. Molbert are entitled to recover damages for loss of consortium. Mr. Molbert testified at trial concerning the close relationship that the Molberts shared with Chris. We do not find the awards of $100,000.00 to each parent as excessive.

COSTS
Finally, plaintiffs contend that the trial court erred in assessing all court costs to Arthur Toepfer. Under La.C.C.P. art. 1920 the trial court is vested with great discretion in determining who is liable for court costs. It may assess those costs against any party in the manner it considers as equitable. DB Orban Company v. Lakco Pipe & Supply, Inc., 496 So.2d 1382, 1385 (La.App.3d Cir.1986). We do not find the trial court's assessment of all court costs to Toepfer to be an abuse of discretion.
In summary, we affirm the trial court's finding that Arthur Toepfer was 95% at fault and DOTD was 5% at fault in causing the accident in which Chris Molbert was injured. We also affirm the court's damage awards and the trial court's assessment of court costs to Arthur Toepfer.
For the above reasons, the decision of the trial court is affirmed. Costs of this appeal are taxed to DOTD.
AFFIRMED.
NOTES
[1] LSA-R.S. 14:98 provides that a person operating a motor vehicle with a blood alcohol content of .1% or above is considered legally intoxicated. This presumption only applies in criminal cases. However, a civil litigant may introduce evidence of a person's blood alcohol content and expert testimony interpreting its effects on a person's ability to operate a motor vehicle. Parker v. Kroger's Inc., 394 So.2d 1178 (La. 1981).
[2] We note that neither Toepfer nor Chris Molbert have any recollection of the accident. Thus, even if Chris Molbert had asked Toepfer to slow down or to let him out of the car, it could not have been proven.