684 So.2d 1041 (1996)
Kathlyn C. REICHERT,
v.
Dr. Emile A. BERTUCCI, Jr., d/b/a De La Ronde Medical Center and Evelyn Alzubaidi and Bryan J. Bertucci, M.D.
No. 96-CA-1213.
Court of Appeal of Louisiana, Fourth Circuit.
December 4, 1996.
*1043 Donna S. Cummings, Cummings, Cummings & Dudenhefer, New Orleans, and Carter B. Wright, Law Office of Carter B. Wright, Covington, for Kathlyn C. Reichert.
Peter E. Sperling, Sidney A. Backstrom, Frilot, Partridge, Kohnke & Clements, L.C., New Orleans, for The Louisiana Patients' Compensation Fund.
Before BARRY, LOBRANO and GULOTTA, JJ.
BARRY, Judge.
The Louisiana Patients' Compensation Fund (LPCF) appeals a lump sum award of $500,000 in favor of plaintiff. The issues are quantum and whether the trial court properly considered the testimony of plaintiff's expert economist. We amend the award by deleting $104,924 for loss of earning capacity and affirm as amended.

Facts
On March 12, 1986, 35 year old Kathlyn Reichert sought treatment from Dr. Brian Bertucci for persistent cold symptoms. It was stipulated that Dr. Bertucci's nurse administered a cortisone injection to Reichert's right buttock. Reichert testified that she immediately felt intense pain from her right hip to her foot. Dr. Bertucci anticipated that the pain would subside within two hours, but Reichert experienced severe pain through the night. She testified that she drove to work late the next morning, having to brake with her left foot, and returned home for lunch. She visited Dr. Bertucci's partner the following morning, 48 hours after the shot. The doctor pressed on the injection site, and Reichert almost collapsed in pain.
That day, Reichert also complained of pain in her groin area when she coughed. Doctors discovered an ovarian cyst which was surgically removed in May 1986. Reichert testified that her leg pain substantially subsided while recuperating following surgery, but intense pain returned when she resumed normal activities in June 1986.
In July 1986 Reichert saw neurosurgeon Dr. Joseph Nadell. A CT scan of her lower spine showed no disc problem and her muscle strength was normal. Dr. Nadell concluded that Reichert "does have sciatic[a], probably due to some perineural scarring." His July 15, 1986 report states that Reichert was experiencing persistent nerve irritation.
On September 16, 1986 Reichert was referred to Dr. David Kline, neurosurgeon, who determined that the injection's impact on the sciatic nerve function was "very, very mild" but that Reichert had an "injection injury" to the sciatic nerve. An EMG, which analyzes the motor function component of the nerves to the muscles, was normal. However, Reichert continued to feel pain. She testified that by the summer of 1987 the pain intensified and she experienced a cold sensation in her right leg. She said her right foot frequently went into spasms for extended periods during which she cried and was incapacitated.
Dr. Toussaint LeClercq, neurosurgeon, testified that an injury to a sensory nerve can cause substantial pain even though the motor nerve is unharmed and the EMG is normal. He concluded that Reichert has chronic pain.
In October 1987 Reichert received a lumbar sensory nerve block which relieved the pain for four days. A second nerve block was administered in November 1987 and a third in April 1988. Her pain subsided each time and she resumed normal activity for four to five months. A fourth nerve block was effective for only six weeks. After each nerve block wore off, intense pain returned from her right buttock to her foot. She said that she attempted acupuncture with minimal results. A fifth nerve block in March 1989 provided relief for six weeks, but that was the last shot because a nerve block cannot be repeated indefinitely.
In July 1989 Reichert had another ovarian cyst and underwent a complete hysterectomy. She missed six weeks of work due to the surgery. She testified that she experienced some relief of the leg pain while recuperating, but intense pain returned when she resumed daily activity and she missed work. On December 1, 1989, Reichert began a leave of absence at her employer's request.
*1044 In January 1990 she underwent surgery to implant an epidural stimulator, a device composed of a battery-operated pack (the size of a small match box) implanted beneath the skin under the rib cage and a wire electrode attached to a spinal nerve. The implant stimulates the nerve and pain is relieved. That surgery (recommended by Dr. Le-Clercq) required a ten day hospital stay, and she was released in April 1990.
The stimulator's battery life is one and a half to six years, and it must be surgically changed. Reichert said the first battery lasted until November 1994, but the next battery was not expected to last as long because the stimulator is now set at a higher voltage due to increased pain. Reichert testified that the stimulator substantially decreased her pain, although she suffers pain of varying degrees, foot spasms, and a cold sensation in her leg. She said the pain is excruciating when the stimulator does not have a good battery.
In April 1990 (four months after the implant), Reichert was hired by Methodist Hospital, where she is Assistant Director of the computer department. She testified that the increased setting on the stimulator allows her to fulfill her duties (at the time of trial Reichert was working sixty hours per week), but she tires easily and suffers pain daily. The more she uses her right leg, the more intense the pain.
Reichert sued Dr. Bryan Bertucci, his nurse who administered the injection, and De La Ronde Medical Center. Liability was stipulated, and Reichert settled with Dr. Bertucci's insurer, Physicians' National Risk Retention, retaining her rights against Dr. Bertucci as a nominal defendant and against the LPCF. In a prior appeal, this Court affirmed summary judgment in favor of St. Paul Fire & Marine Insurance Company, the professional liability insurer for the owner of De La Ronde Medical Center, Dr. Emile Bertucci, Jr. and an organization called "De La Ronde Family Practice." Reichert v. Bertucci, 94-1445 (La.App. 4 Cir. 1/31/95), 650 So.2d 821.
A bench trial was conducted and Reichert was awarded a lump sum of $500,000. The LPCF argues the award includes an excessive general damage award and the trial court erroneously considered testimony from Reichert's economist concerning loss of earning capacity.

Excessive Damages
LPCF argues the lump sum award is for general damages and is excessive. That argument has no merit.
A lump sum judgment is presumed to award all items of damages claimed, and appellant's burden of proving an abuse of discretion is more difficult because the intent to award a specific amount for a particular item is not readily ascertainable. Boutte v. Nissan Motor Corp., 94-1470, p.12 (La.App. 3 Cir. 9/13/95), 663 So.2d 154, 161. See Matthews v. Ferrer, 95-0266, p.8 (La.App. 4 Cir. 11/30/95), 665 So.2d 1211, 1215, which affirmed a "lump-sum award for all damages, both special and general." Matthews subtracted special damages (proved at trial) from the lump sum and reviewed the remainder as general damages.
Reichert's petition requests damages for medical expenses, lost wages, loss of earning capacity, pain and suffering, and "permanent injuries and disability."
She testified that her medical bills totalled $52,293.01 and LPCF does not contest that amount. The bills in evidence corroborate at least that amount. The testimony establishes that Reichert will undergo future medical procedures to change the battery in the epidural stimulator, but there is no testimony as to that cost. Thus $52,293.01 of the lump sum award is for past medical expenses, and presumably there is no award for future medical costs.
Reichert claims that $19,000 is attributable to past lost wages. It is plaintiff's burden to prove past lost wages and time missed from work due to the injury. Stark v. National Tea Co., 94-2633 (La.App. 4 Cir. 5/16/95), 655 So.2d 769, 774-775, writ den. 95-1801 (La.11/3/95), 661 So.2d 1380; Daigle v. U.S. Fidelity & Guaranty Insurance Co., 94-0304 (La.App. 1 Cir. 5/5/95), 655 So.2d 431, 441. Past lost wages are susceptible of mathematical calculation, and the award is *1045 not subject to the much discretion rule. Stark, 655 So.2d at 775; Daigle, 655 So.2d at 441.
Reichert claims that she would have expected a $1,000 wage increase from approximately $26,600 in 1987 to $27,600 in 1988 and another $1,000 in 1989, but her wages decreased to approximately $22,500 in 1988 and 1989. Thus she calculates an $11,000 loss ($5,000 in 1988 and $6,000 in 1989). Reichert explained that her wages decreased in 1988 and 1989 because she requested a demotion due to her pain. However, her testimony that her employer was undergoing significant restructuring tends to negate her claim that her income would have increased $1,000 in 1988 and 1989. The record supports $8,000 lost wages in those years. Reichert also claims that she lost $2,000 per month from December 1, 1989 (when she began the involuntary leave of absence) to April 1990 (when Methodist Hospital hired her). We reject that claim because she did not establish that the loss was a result of the injury. Her involuntary leave of absence was immediately after her hysterectomy and she testified that her employer restructured and her position was eliminated. Thus, $8,000 of the lump sum may be attributable to lost wages.
Reichert also claimed loss of earning capacity. Economist Dr. Harvey Rosen testified that Reichert's loss of earning capacity (discounted to present value) is $104,924 if calculated to a statistical worklife expectancy of 57.6 years old, and $174,272 if calculated to an estimated worklife of 65 years old. Because $104,924 was calculated according to statistical worklife, we conclude that amount of the lump sum award is attributable to loss of earning capacity. LPCF's second assignment addresses whether the trial court properly considered Dr. Rosen's testimony.
The portion of the award attributable to special damages includes $52,293.01 (medicals), $8,000 (lost wages), and $104,924 (loss of earning capacity), totaling $165,217.01. That leaves $334,782.99 in general damages.
The trial court has much discretion in assessing general damages, and an appellate court should not modify the award unless it is beyond that which a reasonable trier of fact could assess for a particular injury to the particular plaintiff under the particular circumstances. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. den. 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Only if the appellate court finds an abuse of discretion may it examine prior awards of general damages to determine the amount the trier of fact reasonably could award. Theriot v. Allstate Insurance Co., 625 So.2d 1337, 1340 (La.1993); Matthews v. Ferrer, 665 So.2d at 1216. We find no abuse in this case.
Reichert was an active, energetic, athletic individual before she received the injection in 1986. She had surgery on her cervical spine twice in the late 1970s and early 1980s and recovered to an active lifestyle, interrupted intermittently by numbness in her hand. She worked, kept house, engaged in sports with her husband and two children, belonged to volleyball leagues in which she played aggressively, and worked in her yard. Since the injection, she has suffered continuous, often excruciating pain. She received five nerve blocks which provided temporary relief, and she has a surgically implanted epidural stimulator to relieve the pain. The implant causes a vibrating or shocking sensation, and the battery must be replaced periodically. Although it allows her to function at work, Reichert testified that she must limit her activities due to pain. She cannot engage in sports or gardening, she tires easily, and the frequency and nature of her sexual relations with her husband have substantially decreased. Dr. LeClercq testified that her injury is probably permanent. The record supports general damages of $334,782.99.

Loss of Earning Capacity
LPCF argues that, presuming part of the award was for loss of earning capacity, the trial court erred by considering the testimony of Dr. Rosen, economist, because his calculations assumed that Reichert would have returned to school and earned a college degree. That argument has merit.
*1046 Earning capacity is not necessarily determined by actual loss; damages may be assessed for what the plaintiff could have earned despite that she may never have taken advantage of that capacity. Daigle, 655 So.2d at 442. An award for loss of earning capacity is inherently speculative and is not susceptible of calculation to a mathematical certainty. Myers v. Burger King Corp., 92-0400, 93-1626 (La.App. 4 Cir. 5/26/94), 638 So.2d 369, 379. Thus the court must exercise sound discretion in determining the award. Daigle, 655 So.2d at 442. See Stark, 655 So.2d at 775.
An expert's calculations merit substantial consideration when assessing impairment of earning capacity. Bernard v. Royal Insurance Co., 586 So.2d 607, 615 (La.App. 4th Cir.), writ den. 589 So.2d at 1058 (La.1991). Factors are the plaintiff's past work history and consistency thereof, the amount the plaintiff probably would have earned absent the injury, and the probability that the plaintiff would have continued to earn wages for the remainder of her working life. Myers, 638 So.2d at 379; Daigle, 655 So.2d at 442.
In Bernard, supra, the jury awarded $1,850,000 for loss of future income, based on an expert's calculations which assumed that the plaintiff would enroll in graduate school and obtain a Ph.D. This Court held that was an abuse of discretion and reduced the award to the amount calculated based on "the plausible assumption that (plaintiff) would work in a laboratory [without a graduate degree], a position she accepted just prior to her accident." Bernard, 586 So.2d at 617.
There is no evidence or indication that (plaintiff) would complete a master's program and earn a doctorate degree. She made no effort to initiate a graduate career. Thus, (the expert's) calculation ... was based on very unrealistic assumptions.
Id. See also Shackman v. Daigle, 447 So.2d 629 (La.App. 4th Cir.1984); Molbert v. Toepfer, 540 So.2d 577 (La.App. 3rd Cir.), aff'd. 550 So.2d 183 (La.1989). Shackman and Molbert involved persons enrolled in school at the time of the injury.
Reichert testified that in 1970 she quit school as a sophomore in college to get married. In 1988 she decided to further her education to learn more about computer systems. She enrolled in two classes between 1992 and 1993. She testified that she experiences pain in her right buttock, leg and foot when she sits at a desk after working all day. She does not think she is eligible for promotion at Methodist Hospital without a college degree. Reichert testified that the pain made it difficult to attend class, but she completed some courses, and Dr. LeClercq did not restrict her attendance at school. She said she did not obtain her degree because she and her husband started a family sooner than expected. Thus, Dr. Rosen's calculations based on the assumption that Reichert would have obtained a college degree and a promotion at Methodist (where she now works) should not have been considered.
We delete $104,924 from the lump sum award, amend the award to $395,076, and affirm as amended.
AMENDED; AFFIRMED AS AMENDED.