512 So.2d 633 (1987)
James Vance BAILES, Plaintiff-Appellee,
v.
UNITED STATES FIDELITY & GUARANTY COMPANY, et al., Defendants-Appellants.
No. 18890-CA.
Court of Appeal of Louisiana, Second Circuit.
August 19, 1987.
Rehearing Denied September 17, 1987.
*636 Mayer, Smith & Roberts by Caldwell Roberts, Shreveport, for defendants-appellants.
Nelson, Hammons & Johnson by Sydney B. Nelson, Shreveport, for plaintiff-appellee.
Before FRED W. JONES, Jr., NORRIS and LINDSAY, JJ.
LINDSAY, Judge.
Suit was filed on October 26, 1981 by James Vance Bailes against Robert Mann, Razorback Oil Tools, Inc. (Razorback) and United States Fidelity and Guaranty Company (USF & G) seeking recovery for damages resulting from an automobile accident. The trial judge filed a written opinion and rendered judgment against Robert Mann, Razorback and USF & G, in solido, in the amount of $189,874.97, plus interest and costs. From this judgment, Razorback and USF & G have appealed. Robert Mann has failed to appeal and therefore that portion of the trial court judgment applicable to him is now final.
In this appeal, appellants claim that the trial court erred in refusing to permit the introduction into evidence of certain testimony and documents, in concluding that the car driven by Robert Mann was owned by Razorback and in granting an excessive amount of damages. For the following reasons, we affirm in part and reverse in part the trial court judgment.

BACKGROUND FACTS
On the night of October 27, 1980, at approximately 9:30 p.m., plaintiff, Mr. James Vance Bailes, while operating his automobile along Highway 169 in Caddo Parish, Louisiana, was involved in an automobile accident with the defendant, Mr. Robert Mann, who was operating a 1977 Oldsmobile automobile registered to Razorback Oil Tools, Inc.
The accident occurred at the intersection of Highway 169 and Buncomb Road. Mr. Bailes was proceeding along Highway 169. The accident occurred when Mr. Mann, traveling at approximately 50 m.p.h. on the Buncomb Road, failed to observe a stop sign and proceeded into the intersection when Mr. Bailes had the right-of-way. The collision knocked Mr. Bailes' vehicle off the road and caused it to flip over and come to rest upside-down.. Mr. Bailes suffered serious injuries in the accident.
The investigating officer charged Mr. Mann with failure to yield at a stop sign. Mr. Mann later entered a plea of guilty to that charge.
Mr. Mann was a native of England, but at the time of the accident he was living here with his uncle, Mr. Roscoe Smith, an officer of Razorback. Mr. Mann was employed by Razorback.
Plaintiff filed suit against Mr. Robert Mann, Razorback Oil Tools, Inc. and United States Fidelity and Guaranty Company, Razorback's insurer.
Following a trial on the merits, the trial court found in favor of the plaintiff and rendered judgment against all three defendants, in solido, in the total sum of $189,874.97, together with interest thereon from date of judicial demand, until paid, together with all costs, including expert witness fees. Thereafter, appellants, Razorback and USF & G, perfected suspensive appeals.

THE TRIAL COURT PROCEEDINGS
In its written opinion, the trial court stated that the two primary issues involved in this case were (1) whether the Oldsmobile automobile driven by Mr. Mann at the time *637 of the accident was owned by Mr. Mann or by Razorback, and (2) the amount of damages sustained by the plaintiff.
With respect to ownership of the vehicle, the evidence at trial showed that at the time of the accident, the car was registered to Razorback. At the scene of the accident, the investigating officer noted that the vehicle was owned by Razorback. Later, Razorback attempted to salvage parts from the vehicle.
The vehicle was listed on the USF & G policy as a vehicle belonging to Razorback. Further, following the accident two claim notices (Accord Auto-Liability Accident Notices) were filed by Razorback with USF & G. Both of these notices show that Razorback was still the owner of the vehicle. The notices were filed October 28,1980 and October 27, 1981 and were signed by Mr. K.K. LaFleur, an officer of Razorback. Also, the insurance agent who wrote coverage for Razorback testified that he was never notified that the vehicle in question had been sold and that the vehicle had not been deleted from the USF & G policy.
Appellants contended in the trial court, as they do here, that prior to the accident, Mr. Mann had purchased the automobile from Razorback. At trial, the appellants sought to prove that Mr. Roscoe Smith, on behalf of Razorback, sold the automobile to Robert Mann, the purchase price being represented by a promissory note in the amount of $2,500 executed by Mr. Mann in favor of Razorback.
When the case was tried, Mr. Mann was no longer living with his uncle, Roscoe Smith, and had returned to England. Mr. Mann did not testify at trial, nor did Mr. Smith.
Although neither Mr. Mann nor Mr. Smith testified at trial, appellants attempted to show, through the deposition testimony of Mr. K.K. LaFleur, that Razorback, acting through Mr. Smith, sold the vehicle to Mr. Mann. Plaintiffs objected to this testimony as hearsay. The objection was ultimately sustained by the trial court and the testimony was not considered by the trial court in arriving at its decision.
Appellants also attempted to introduce into evidence the answers of Mr. Mann to various pretrial interrogatories and requests for admissions of fact which had been propounded to him and answered in England. In these answers, Mann stated that he had purchased the vehicle from Razorback prior to the accident. Plaintiff also objected to the admissibility of this evidence and this objection was also sustained by the trial court.
The promissory note, allegedly given by Mr. Mann for the purchase price of the automobile was introduced into evidence by appellants. Plaintiff objected to this evidence, contending that no proper foundation had been laid to connect the promissory note to the alleged sale of the automobile. The trial court later ruled that the note was also inadmissible.
In a further attempt to show that Mann purchased the vehicle from Razorback, appellants introduced into evidence a copy of the second claim notice submitted by Razorback to USF & G on which someone had written the words, "insured sold vehicle to Robert Mann." It was never determined who wrote the information on the copy of the claim notice, but Ms. Wanda Mitchell, an insurance adjustor for USF & G, stated that the clerks often sent new information to the adjustors by making a copy of a prior notice, thereby insuring that the new information was credited to the proper account, and writing the new information on the copy of the old notice.
After reviewing all the admissible evidence, the trial court ruled that the automobile in question was owned by Razorback at the time the accident occurred and that the USF & G policy was therefore in effect and provided coverage for the accident.
The court found that the accident was caused by the negligence of Mr. Mann. No evidence was presented to show that plaintiff was at fault to any degree. Therefore, Mr. Mann was found to be 100 percent at fault in causing the accident, and that finding by the trial court is not made an issue in this appeal.
*638 The trial court then awarded damages to Mr. Bailes in the following amounts: $75,000 in general damages, $70,000 in loss of future income, $40,000 in loss of past earnings and past earning capacity, $4,874.77 in special damages for medical expenses and $200 for an expert witness fee.

SPECIFICATIONS OF ERROR
In seeking reversal of the trial court judgment, appellants contend that the trial court erred in the following respects:
1. The trial court erred in finding that K.K. LaFleur, an officer of Razorback Oil Tools, Inc., could not testify regarding the sale of a corporate asset, i.e., the automobile driven by Robert Mann at the time of the accident sued upon.
2. The trial court erred in ruling that the answers to interrogatories and the answers to requests for admissions filed by Robert Mann were inadmissible.
3. The trial court erred in ruling that the promissory note evidencing the debt owed to Razorback Oil Tools, Inc. by Robert Mann was inadmissible.
4. The trial court erred in finding that the vehicle driven by Robert Mann at the time of the accident was owned by Razorback Oil Tools, Inc.
5. The trial court erred in awarding $75,000 in general damages to the plaintiff.
6. The trial court erred in its awards of loss of past and future income and earning capacity.

TESTIMONY OF K.K. LAFLEUR
The appellants contend that the trial court erred in refusing to admit into evidence the deposition testimony of K.K. LaFleur concerning the sale of the automobile to Robert Mann. The trial court ruled that this portion of Mr. LaFleur's testimony was hearsay. We agree.
Any part or all of a deposition may be entered into evidence at a trial, so far as admissible under the rules of evidence applied as though the witness were then present and testifying. LSA-C.C.P. Arts. 1450 and 1451. At trial, plaintiff's objection to the admission of the deposition was a hearsay objection. The trial court upheld this objection.
Hearsay evidence is defined as testimony in court, or written evidence of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out of court asserter. In other words, it is a statement that is offered into evidence to prove the truth of the matters therein stated, but that is not made by the author when a witness before the court at the particular trial in which it is so offered. Hearsay evidence is excluded as unreliable because it is based upon statements made by persons who are not before the court, have not been sworn and are not available for cross examination. State in Interest of Clark, 400 So.2d 334 (La.App. 4th Cir. 1981).
During the taking of his deposition, Mr. LaFleur was questioned about the sale of the vehicle to Robert Mann. Mr. LaFleur stated that the sale was conducted by Roscoe Smith. Plaintiff contends that the trial court correctly ruled that this testimony was hearsay and was not admissible to prove the sale of the auto by Razorback prior to the accident. Appellants argue that Mr. LaFleur should be able to testify about the sale because Mr. LaFleur is an officer of Razorback, and therefore represents the corporation. Appellants contend that the corporation knew of the sale because the knowledge of any officer of the corporation, in this case Roscoe Smith, is imputed to the corporation and Mr. LaFleur could testify about it.
While it is true that a corporation is bound by the knowledge of its officers, it cannot be assumed that the knowledge of the corporation is imputed to every officer. Additionally, the rule that a corporation is bound by the knowledge of its officers is a rule used in determining liability. Here, we are considering the rules of evidence and not of liability. Hearsay evidence is excluded as being unreliable. In the particular circumstances of this case, in order to prove the alleged sale of the automobile, *639 appellants were required to present evidence through an officer of Razorback who had personal knowledge of the events. Thus, Mr. LaFleur could not testify as to actions taken by Mr. Roscoe Smith on behalf of Razorback simply because both were officers of Razorback.
The appellants also contend that the objected to testimony of Mr. LaFleur is admissible under an oral business report exception to the hearsay rule, primarily relying upon L & K Land, Inc. v. Billiot, 428 So.2d 1108 (La.App. 1st Cir.1983). In that case, plaintiff sued to have the defendant evicted. Defendant argued that he was served on April 21, 1982 and that the hearing was held on April 23,1982, contrary to LSA-C.C.P. Art. 4732 which requires a hearing not less than three days after service. At trial, a deputy was allowed to testify that his subordinate had served defendant with citation on April 20,1982. On Appeal, defendant claimed this was hearsay. However, the defendant, acting pro se, failed to object at trial. The appellate court ruled that the testimony of the deputy was not objected to and was therefore part of the record. The appellate court went on to say that even though the deputy's testimony was hearsay it was not inadmissible. The court stated that there was an exception to the hearsay rule for oral business reports which are made during the normal operation of a business, such report being a part of the system upon which the office depends. The court held that this exception is analogous to the written business records exception.
Even if we were to adopt an oral business report exception to the hearsay rule, we find that the testimony of Mr. LaFleur would not fall within that exception. The deposition of Mr. LaFleur does not indicate how he acquired, or from whom he acquired, knowledge about the alleged sale of the car from Razorback to Robert Mann. There is no indication that Mr. Smith followed any established business procedure in giving oral reports to Mr. LaFleur about this or any other transaction. Further, there is no indication in the record that Mr. Smith was unavailable to testify.
We note, parenthetically, that Mr. LaFleur sent a claim notice to USF & G naming Razorback as the owner of the vehicle almost a year after the accident. If an oral report was made to Mr. LaFleur, it must have been made over a year after the sale.
Even under an oral business report exception to the hearsay rule, the testimony of Mr. LaFleur would not fall within that exception. As stated by the trial court, there was no evidence to "support the proposition that those statements were made as part of a systematic oral reporting network within the corporation."
For the foregoing reasons, we find that appellants' assignment of error concerning the admissibility of Mr. LaFleur's testimony on this point is without merit.

ANSWERS TO INTERROGATORIES AND REQUESTS FOR ADMISSIONS BY ROBERT MANN
At trial, appellants introduced the responses of Robert Mann to interrogatories propounded by plaintiff, as well as his responses to requests for admissions. These were entered into evidence subject to a hearsay objection by plaintiff. In its opinion, the trial court stated that certain portions of the answers and admissions were hearsay. Those portions which were ruled inadmissible as hearsay related to the ownership of the vehicle driven by Robert Mann. Appellants contend the trial court erred in ruling this evidence inadmissible.
Appellants first contend that Mr. Mann's responses to the requests for admissions are the equivalent to judicial confessions and are therefore admissible. However, the answers by Mr. Mann which are pertinent to the issue of ownership of the vehicle were not admissions by Mr. Mann, but rather they were denials accompanied by explanation.
For example, to the requested admission "Robert Mann had either expressed or implied permission from Roscoe Smith, President of Razorback Oil Tools, Inc., to drive *640 the 1977 Oldsmobile at the time and place of the accident described above," Mr. Mann responded "This is not admitted. No express or implied permission was required as Robert Mann owned the said vehicle." As stated in Madden v. Louisiana Power and Light Company, 334 So.2d 249 (La. App. 4th Cir.1976), the purpose of a request for admissions is to eliminate the necessity of proving uncontroverted facts. Denials of the facts contained in such requests, however, have no independent probative value. Moreover, LSA-C.C.P. Art. 1468 specifically states that "any matter admitted under this rule is conclusively established ..." (emphasis added). Therefore, appellants' argument that the answers of Mr. Mann are admissible as judicial confessions are meritless.
The answers to interrogatories and denials with accompanying explanations given to the request for admissions constitute hearsay. Mann's answers and response are affidavits, offered for the truth of their content, made out of court by a person not subject to cross examination. Being presented in the form of an affidavit does not prevent the evidence from being hearsay. See: Frazier v. Green Steel Building, Inc., 409 So.2d 1290 (La.App. 2d Cir.1982).
Appellants seem to contend that Mr. Mann's answers are admissible even though hearsay, based upon American Hardware Mutual Insurance Company v. Stine, 341 So.2d 1301 (La.App. 3rd Cir. 1977). Therein, the court stated that interrogatories were admissible into evidence at trial because the person who answered the interrogatories was absent from the state and therefore unavailable to testify at trial. That decision is distinguishable. There is no indication in that case that objection was made to the evidence in the deposition. The objection was to whether the deposition could be used instead of requiring the attendance of the witness. Therefore, that case did not deal, as we do, with a person who is out of state and has given hearsay testimony in his answers to which specific objection has been made.
Appellants also make the contention that the answers given by Mr. Mann are admissible, even though hearsay, because they are statements against personal interest. They argue that Mr. Mann's statements that he owned the vehicle at the time of the accident subjects him to the judgment rendered herein without the assistance of appellants to pay the judgment. Hence, they argue, Mr. Mann is accepting the sole responsibility to pay the judgment.
In order for hearsay evidence to acquire the special indicia of reliability of the declarations against interest exception, the statement must be made against the interest of the declarant at the time it was made. Freeman v. Myles, 449 So.2d 1096 (La.App. 4th Cir.1984).
Plaintiff points out that no one, including Mr. Mann, ever made the claim that the car belonged to Mr. Mann until after Mr. Mann had returned to England and was therefore, no longer within the jurisdiction of any court of this country. Hence, Mr. Mann's statements were not against his interest because a judgment in this country would have no effect against him as long as he did not venture back to this country. Plaintiff further points out that Mr. Mann's statements actually aided his uncle by exonerating his uncle's company from any liability and at the same time did not hurt his own financial well being as the judgment could have no effect against him.
Although appellants contend that the judgment could have effect against Mr. Mann through comity, they have failed to cite any authority that England has agreed to recognize and enforce judgments of this country against citizens of England.
The trial court did not err when it stated that "the statements which would have been against Mann's interest at the time of the accident were not damaging in the least after he had returned to England and, therefore, could not be considered statements against his interest when made." Because the statements were not against Mr. Mann's interest, they do not fall within an exception to the hearsay rule and were correctly excluded from evidence as hearsay.
*641 Actually, insofar as appellants are concerned, the statements of Mann are simply self-serving. Mann was Razorback's employee. Mann is the nephew of Mr. Roscoe Smith, an officer of Razorback. The answers given by Mr. Mann to the requests for admissions are simply affidavits, made out of court and not subject to cross examination. Appellants cannot use as evidence to prove their defense the hearsay statements and denials of its employee and codefendant made in response to plaintiff's requests for admissions of fact.
The statements given by Mann are hearsay, not subject to an exception to the hearsay rule, and were properly excluded by the trial court.
Therefore, this assignment of error has no merit.

INADMISSIBILITY OF PROMISSORY NOTE
In seeking to prove the sale of the vehicle from Razorback to Mann, appellants also sought to introduce into evidence a promissory note executed by Robert Mann in favor of Razorback in the amount of $2,500. Appellants contend the note represented the purchase price of the automobile. The note bore no writing to identify it with a sale or otherwise identify it with the alleged transaction. The trial court ruled that the note was inadmissible because it was hearsay and because of the lack of a proper foundation. Appellants contend that the note, even if hearsay, was admissible based upon several exceptions to the hearsay rule. They further contend that a proper foundation was laid for its admission into evidence. We need not address whether the note was hearsay or fell under an exception to the hearsay rule, because we find that it was not admissible into evidence because of the lack of a proper foundation.
The only evidence in the record that the note was given in exchange for the vehicle driven by Robert Mann on the night of the accident was the hearsay testimony of Mr. LaFleur. That testimony was correctly ruled to be inadmissible hearsay. As stated above, the note itself does not contain any language which would indicate that it was given as part of a transaction constituting the sale of the vehicle in question. Nevertheless, appellants contend that the note is circumstantial evidence of the sale of the vehicle because "if Mann owed the money to the corporation, this is connected to the transaction." We disagree.
Despite the fact that the note evidences a debt by Mann to Razorback, there is no indication of why Mann owed this debt or if it was given for the vehicle. Because there is no evidence that the note offered in evidence by appellants was in any way connected to the purported sale of the vehicle, there has not been a sufficient foundation laid for its admission into evidence. Therefore, this assignment of error is meritless.

OWNERSHIP OF THE VEHICLE
Appellants contend that the trial court erred in determining that the vehicle was owned by Razorback at the time of the accident. We find no error in the factual determination of the trial court. The primary evidence presented which would tend to show that the vehicle was owned by Mr. Mann was ruled inadmissible.
The plaintiff clearly proved that the vehicle was owned by Razorback. The plaintiff introduced the vehicle registration, which listed Razorback as the owner. The report of the investigating officer at the scene of the accident indicated Razorback was the owner. The vehicle was never removed from Razorback's policy with USF & G. Furthermore, Razorback stated it was the owner in claims filed with its insurance company following the accident. Razorback also made attempts to salvage parts from the wrecked vehicle after the accident. No claim was made that anyone owned the vehicle other than Razorback until over a year after the accident. In light of this evidence, we find no error in the trial court's conclusion that the vehicle was owned by Razorback when the accident occurred.

COURSE AND SCOPE OF EMPLOYMENT
Appellants also contend that there is insufficient evidence to show that Robert *642 Mann was acting within the course and scope of his employment at the time of the accident. We agree, and find that the trial court erred in this regard.
An appellate court should not disturb the factual conclusion of the trial court, particularly when it involves credibility of witnesses, unless the conclusion is shown to be clearly wrong. The manifest error standard of appellate review applies even when the evidence before the trier of fact consists of written reports, records and depositions. Virgil v. American Guarantee and Liability Ins. Co., 507 So.2d 825 (La., 1987).
We agree with the trial court's determination that Robert Mann was employed by Razorback at the time of the accident. However, that fact alone is not sufficient to create liability on the part of Razorback for the negligence of Robert Mann.
Every person who is a master or employer is answerable for the damage occasioned by his servants and employees in the exercise of the functions in which they are employed. LSA-C.C. Art. 2320. Sibley v. Board of Supervisors of Louisiana State University, 477 So.2d 1094 (La. 1985). An employee is acting within the course and scope of his employment while on a job connected mission which the employer had reason to expect would be performed. When, at the time of an accident, the employee is on a mission contemplated by employer and employee for which he is to be compensated, ... the employee is within the scope of his employment. Michaleski v. Western Preferred Casualty Company, 472 So.2d 18 (La.1985).
In the instant case, we find no evidence that, at the time of the accident, Robert Mann was on a mission for Razorback which would place him within the course and scope of his employment. Therefore, the trial court erred in holding Razorback liable for the negligence of Robert Mann and the judgment of the trial court must be amended to delete any reference to liability on the part of Razorback. Nevertheless, there is sufficient evidence in the record from which the trial court could correctly conclude that Mr. Mann was operating the vehicle with Razorback's permission at the time of the accident and thus the USF & G policy would still provide coverage for this accident.

EXCESSIVE DAMAGES
Appellants claim that the trial court abused its discretion in granting an award for general damages in the amount of $75,000.
The evidence reveals that Mr. Bailes was seriously injured. He was rendered unconscious by the impact of the collision. He was later taken to the hospital emergency room where he was treated. Mr. Bailes suffered two main injuries. First, he received a severe head laceration. The cut began at the corner of his left eye and continued to the top of his head. The second major injury was a fracture of the second vertebra. Mr. and Mrs. Bailes testified about the extreme pain suffered by Mr. Bailes while receiving emergency treatment and for the next several days which he spent in the hospital. Mr. Bailes was required to wear a neck brace for several months. During this time, the slightest movement of his head caused extreme pain. In fact, Mr. Bailes testified that he was unable to go to the hospital to have stitches removed from his head because the movement of the vehicle in which he was riding caused extreme pain in his neck.
After several months, Mr. Bailes' treating physicians decided the fracture in his neck would not heal on its own. Thus, the doctors were required to perform a surgical procedure described as a spinal fusion in which bone from Mr. Bailes' hip was fused to his vertebrae. Mr. Bailes suffered pain for some time thereafter in his hip and neck. However, the procedure was a success and over a period of time the pain in Mr. Bailes neck was greatly reduced.
Despite the success of the operation, the medical testimony revealed that Mr. Bailes still suffers a permanent loss of eighty percent of the rotation of his neck, causing difficulty in driving and other activities which require him to look over his shoulder or to the side. Additionally, Mr. Bailes *643 testified that he still has pain which lasts several days each time he attempts any activity which causes strain to his neck muscles.
Prior to the accident, Mr. Bailes had started his own safety supply business. The business consisted of selling and Mr. Bailes was the only salesman. Because of the accident, he suffered a loss of income (discussed hereafter) and was forced to close the business which was operating at that time. Later, Mr. Bailes was able to open another business selling a different product. However, for a considerable length of time, it was necessary for his wife or son to drive Mr. Bailes to meet clients because his medical condition affected his ability to drive safely. Additionally, Mr. Bailes was not able to see as many customers as before due to a lack of stamina.
The evidence also showed that before the accident occurred, Mr. Bailes operated a farm, consisting of one hundred acres and approximately thirty head of cattle. Mr. Bailes was no longer able to perform many of the jobs required on his farm, such as heavy lifting or driving his tractor. Mr. Bailes now has six head of cattle. For a considerable period of time, Mr. Bailes' farming activities were curtailed because of his injuries.
At the time of the trial, almost six years after the accident, Mr. Bailes testified that his condition has improved. He is now able to referee high school football games and jog. However, he is still subject to increased fatigue and discomfort in his neck, and he has lost eighty percent of the rotation of his cervical spine.
Before a general damage award can be altered or modified on appeal, the record must show a clear abuse of the trial court's discretion. Ard v. Samedan Oil Corporation, 483 So.2d 925 (La.1986); Myers v. Ford Motor Company, 486 So.2d 1030 (La.App. 2d Cir.1986).
We have carefully considered the unique facts and evidence in this case. Having reviewed the evidence and the argument of counsel, we find no abuse of the trial court's discretion, therefore, we will not disturb the award.

LOSS OF INCOME
Appellants complain that the trial court erred in awarding $40,000 for loss of past income and $70,000 for loss of future income and earning capacity. We find no error in these awards.
Loss of business profits, or in this case personal income, resulting from an offense or quasi offense are special damages which in many cases are not susceptible of proof to a mathematical or legal certainty. However, loss of profits or income must be proved with reasonable certainty, i.e., by the more probable than not standard, and an award for loss of profits or income cannot be based on speculation and conjecture. It therefore follows that the trier of fact must be afforded much discretion in the determination of such damages where the evidence clearly shows that damage is proven but is not capable of proof to a mathematical or legal certainty. However, the trier of fact must have a reasonable basis for its discretion and where the record contains no factual basis for such an award or the amount so awarded, the appellate court must reverse or amend the award to conform to the evidence. Rosenblath v. Louisiana Bank & Trust Company, 432 so.2d 285 (La.App. 2d Cir.1983).
The appropriate procedure for testing whether the trial court abused its discretion by making an excessive award is to determine whether the award can be supported under the interpretation of the evidence most favorable to the plaintiff which reasonably could have been made by the fact finder. Cutchall v. Great American Pump Company, 460 So.2d 1106 (La.App. 2d Cir.1984).
In the instant case, in determining loss of past income, the trial court found that plaintiff was completely unable to work for approximately eight months. The trial judge also determined that plaintiff's work production was restricted for many months thereafter and that, at the time of trial six *644 years after the accident, plaintiff was still suffering from the effects of the accident which had also affected his ability to pursue his livelihood.
Brad Mayo, an expert in accounting, testified that plaintiff's average earnings per year over the past several years before the accident had been $26,906. Documents admitted into evidence showed that plaintiff had earned $11,250 during the ten months preceding the accident. This amount would annualize to $13,500 earned in by plaintiff 1980 as a self-employed salesman.
The testimony indicated that Mr. Bailes business would have probably improved and would have been highly profitable. However, following the accident and prior to trial, Mr. Bailes was not able to pursue his business. In addition to being unable to pursue his safety supply business, his farming efforts also suffered, as mentioned above.
Based upon plaintiff's past income, as well as his disability, we do not believe the trial court erred in awarding plaintiff the sum of $40,000 for lost past wages and diminished earning capacity.
In setting an award for lost future income the fact finder should consider plaintiff's physical condition before and after his injury; his past work record and the consistency thereof; the amount plaintiff probably would have earned absent the injury complained of; and the probability he would have continued to earn wages over the balance of his working life. Morgan v. Willis-Knighton Medical Center, 456 So.2d 650 (La.App. 2d Cir.1984); Cutchall, supra.
We find that the trial court adequately considered these factors and applied them to the facts of this case.
The trial court considered Mr. Bailes' disability and the limitations placed upon his ability to effectively work as a traveling salesman. The evidence supports the trial judge's finding that plaintiff's business is limited because of his endurance, the immobility of his neck and the fact that he tires easily. As a result of these limitations, his productivity and income will be decreased. Mr. Mayo actually calculated that plaintiff's lost earnings would be greatly in excess of the amount awarded by the trial court. Our review of the record revealed that the trial court's award of $70,000 in lost future income was not an abuse of discretion.

CONCLUSION
For the foregoing reasons, we find that the trial court erred in granting judgment against Razorback. In all other respects, the judgment of the trial court is affirmed. The judgment of the trial court is recast as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiff, James Vance Bailes, and against the defendants, Robert Mann and United States Fidelity and Guaranty Company, in solido, in the principal amount of $189,874.97 together with legal interest thereon from date of judicial demand on October 26, 1981, until paid and costs of these proceedings.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the expert witness fee of Dr. Donald Ray Smith is fixed in the amount of $200 and taxed as costs of these proceedings.
All costs of this appeal are assessed to appellant, USF & G.
AFFIRMED IN PART, REVERSED IN PART.

ON APPLICATION FOR REHEARING
Before SEXTON, LINDSAY, FRED W. JONES, NORRIS and HALL, JJ.
Rehearing denied.