655 So.2d 769 (1995)
Janice Marie STARK and Carlos Stark
v.
NATIONAL TEA COMPANY, et al.
No. 94-CA-2633.
Court of Appeal of Louisiana, Fourth Circuit.
May 16, 1995.
Rehearing Denied June 19, 1995.
*771 Wayne M. Leblanc, Metairie, for plaintiffs/appellees, Janice Marie Stark and Carlos Stark.
Roger J. Larue, Metairie, for defendant/appellant, Nat. Tea Co.
Before PLOTKIN, BYRNES and JONES, JJ.
PLOTKIN, Judge.
This appeal presents the unique, but increasingly common, situation in which the entire incident in question is captured on video tape. As such, it requires us to apply the manifest error/clearly wrong standard of review to a record that consists of more than just cold transcripts. We are thus afforded the opportunity to see what the jury saw and thereby gauge the correctness of its decision, while still circumscribed by the governing standard of appellate review.
Defendant, National Tea Company ("NTC"), appeals a jury verdict in favor of plaintiffs, Janice Marie Stark and Carlos Stark, finding Mrs. Stark not at fault and awarding plaintiffs $81,750.00 for damages resulting from a slip and fall inside one of NTC's Canal Villere Supermarkets. Based on our review of the record, including a video tape on which the entire accident in question was captured, we amend the trial court's judgment, and, as amended, affirm that judgment.

FACTS
On February 25, 1992, Mrs. Stark slipped and fell in the produce section of National Canal Villere Supermarket Store Number 8. The entirety of the accident was caught on the store's surveillance video system. The video shown at trial and contained in the record on appeal shows a National Tea Company employee, Kenny Gross, spraying an unidentified substance onto the floor of the produce aisle. As the employee is spraying this substance, Mrs. Stark and her husband are seen perusing the produce.
Gross left the wet area briefly to retrieve a "Wet Floor" sign to place over the area that he had just sprayed. Mrs. Stark, while reaching for some green onions, slipped and fell. She suffered damage to her neck, lower back, ankle, left wrist, and left shoulder. Nearly fifteen months after the fall, Mrs. Stark underwent surgery to alleviate constant pain in her elbow. As a result of this fall and the ensuing surgery, Mrs. Stark has lost approximately 25% of the strength in her left hand. Mrs. Stark is left-handed.
The jury found that as a result of the dangerous condition that created an unreasonable risk of injury, National Tea was 100% at fault for the injury to Mrs. Stark. It awarded her general damages of $33,000, loss of past and future wages of $35,000, and *772 $12,000 in past and future medical expenses. Mr. Stark was awarded $1,750 for his claim for loss of consortium.
In this appeal, NTC contends that the jury erred in finding it 100% negligent. NTC avers that the video reveals that Mrs. Stark was comparatively negligent in causing her accident and that the jury's verdict must be amended accordingly. NTC also complains that the jury's awards for past and future medical expenses and loss of past and future earnings are excessive and must be reduced. Plaintiffs answered the appeal, alleging that the trial court erred in failing to give a separate jury charge and interrogatory concerning a separate award of damages for the scar on Mrs. Stark's elbow resulting from her surgery.

ISSUES
Three issues are presented by this appeal:
1) Was the jury manifestly erroneous in finding NTC 100% at fault in causing Mrs. Stark's accident?
2) Did the jury abuse its discretion by awarding Mrs. Stark $12,000 for past and future medical expenses?
3) Did the jury abuse its discretion by awarding Mrs. Stark $35,000 for loss of past and future wages?
We will discuss each of these in turn.

DISCUSSION
NTC's Fault
In its first assignment of error, NTC argues that the jury erred in absolving Mrs. Stark from any fault in causing her accident. The jury's finding in this regard is one of fact that may not be disturbed by this court in the absence of manifest error or clear wrongness. In its most recent pronouncement on the issue of appellate court review of facts, the Louisiana Supreme Court stated as follows:
Reversal of the jury's factual finding should only occur where the factfinder is manifestly erroneous or clearly wrong. Where there are conflicts in testimony, the factfinder's reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the reviewing court may feel its own evaluations and inferences are just as reasonable. However, the reviewing court's function requires more than just a review of the record to find a reasonable factual basis for the finding; it requires a reviewing court to view the record in its entirety to determine whether the jury was clearly wrong. Finally, where two permissible, i.e. reasonable, views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous. Ambrose v. New Orleans Police Dep't Ambulance Serv., 93-3099, 93-3110, 93-3112 (La. 7/5/94); 639 So.2d 216; Stobart v. State, through DOTD, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Hines v. Remington Arms Co, Inc., 94-0455, pp. 6-7 (La. 12/8/94), 648 So.2d 331, 335. However, in applying this standard, we must bear in mind the supreme court's admonition that
[w]here documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination.
Rosell, 549 So.2d at 845.
Following our careful review of the record in its entirety, we conclude that the jury was clearly wrong and committed manifest error in absolving Mrs. Stark of any fault in causing her accident. In particular, our review of the videotape introduced at trial, reveals the following events at the indicated times:
13:23:31: Gross is seen picking up a can from his supplies.
13:23:34-13:24:04: Gross is seen spraying foam on the aisle. The foam is plainly visible as Gross moves down the aisle. It extends from underneath the produce counter into the aisle, covering approximately 25%-30% of the entire aisle.
13:23:57: Mr. and Mrs. Stark become visible at the end of the produce aisle.

*773 13:24:07: Gross is seen returning to his supplies and retrieving a new can of foam.
13:24:37-13:24:55: Gross resumes spraying the floor. The foam again is patently obvious on the floor as he moves from one location to the next.
13:24:40: Mr. and Mrs. Stark begin moving down the aisle toward the area in which Gross is working.
13:24:52: Mrs. Stark reaches for something on the produce counter, which she subsequently drops.
13:24:56: Gross ceases spraying and begins to walk back toward his supplies to retrieve a "Wet Floor" sign.
13:25:01: Gross picks up the "Wet Floor" sign and begins walking back toward the Starks.
13:25:02: Mrs. Stark slips and falls.
This chronology of events overwhelmingly convinces us that Mrs. Stark should have seen Gross's activities and was thus partially at fault in causing her accident. The most telling moment of the video occurs at 13:24:50. At that moment in time, Gross is continuing to spray the floor. He is bent over at the waist and is standing in the aisle. Simultaneous with his spraying, Mrs. Stark can be seen looking to her right as she approaches the area in which Gross is working. Clearly she saw or should have seen Gross bent over and partially blocking the aisle and thus should have been aware that he was working on the floor. In addition, the foam that Gross was spraying remains clearly visible on the black-and-white security tape and thus should have been spotted by Mrs. Stark as she walked down the aisle. The objective evidence introduced in this case (i.e., the surveillance video) compels us to reject the jury's contrary conclusion as manifestly erroneous.
It thus becomes our duty under Gonzales v. Xerox Corp., 320 So.2d 163, 165 (La.1975), to review the record in its entirety and quantify the appropriate amount of fault for each party. The Louisiana Supreme Court established the relevant factors in determining comparative fault in Watson v. State Farm Fire & Cas. Ins. Co., 469 So.2d 967 (La.1985). Those factors are as follows:
(1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.
Id. at 974. Also relevant under Watson is "the relationship between the fault/negligent conduct and the harm to the plaintiff." Id.
The Louisiana Supreme Court has declared that "[a]n actor's duty to keep a proper lookout is diminished when shelved merchandise attracts his attention." Kimble v. Wal-Mart Stores, Inc., 539 So.2d 1212, 1214 (La.1989) (citing Kavlich v. Kramer, 315 So.2d 282 (La.1975)). This court has concluded that the reason for this diminished duty lies in the merchant's intentional attempts to draw the customer's attention toward merchandise on the shelves, thereby diminishing the attention that the customer pays to where he or she is walking. See Boudreaux v. Schwegmann Giant Supermarkets, 585 So.2d 583, 588 (La.App. 4th Cir.1991), writs denied, 590 So.2d 593, 595 (La.1992). However, this court has also concluded that although the customer's duty to keep a proper lookout is diminished when inside a self-service store, that duty is not wholly extinguished. Rather, "customers retain a duty to exercise reasonable care under the circumstances and are liable for injuries caused by hazards `observable with the exercise of reasonable care.'" Id. (quoting Hutchinson v. Wal-Mart, Inc., 573 So.2d 1148, 1151 (La.App. 1st Cir.1990)).
Applying the foregoing precepts, we conclude that the jury should have found plaintiff 40% at fault in causing the accident. The foam in question was white and was clearly visible on the floor as Gross sprayed it, even in a grainy, black-and-white surveillance camera video that occupies only ¼ of a normal television screen. In addition, as we noted before, the amount of foam on the floor covered a significant portion of the entire aisle. Moreover, NTC's employee. Gross, was clearly visible working in the aisle *774 the entire time and plaintiff and her husband are seen walking down the produce aisle. Even taking into consideration Mrs. Stark's reduced duty to keep a proper lookout, she should have seen Gross working in the aisle and thus should have been cognizant that some kind of maintenance work was being performed. Because she did not do so, we find her 40% at fault. A review of similar cases supports this apportionment of fault. See Brooks v. Henson Fashion Floors, Inc., 26,378, p. 6 (La.App.2d Cir. 12/7/94), 647 So.2d 440, 444 (plaintiff 40% at fault in accident when she stepped onto uncarpeted concrete floor covered with fresh glue); Bergeron v. Southeastern Louisiana Univ., 610 So.2d 986, 989 (La.App. 1st Cir.1992) (plaintiff 40% at fault in slip and fall in college dorm where floor was covered with rain water); Boudreaux, 585 So.2d at 588 (plaintiff 40% at fault in accident when she tripped on a clear, liquid substance on floor of grocery store).
Past and Future Medical Expenses
The jury awarded Mrs. Stark $12,000 for past and future medical expenses.[1] In its brief, NTC essentially concedes that Mrs. Stark was entitled to $5,692.74 in past medical expenses as documented in plaintiff's Exhibit "B". Therefore, we consider only the propriety of the additional $6,307.26 awarded by the jury.
At the outset, we note that this additional amount must be considered as intended to compensate Mrs. Stark only for any future medical expenses that she might incur. Counsel for plaintiff argues that a portion of this award should be deemed to compensate Mrs. Stark for the scar on her left elbow, independently of her general damages award of $33,000. According to plaintiff, her attorney requested that the trial court separately instruct the jury as to and include a specific jury interrogatory on damages for plaintiff's scar. Although the trial court initially indicated that it would comply with this request, it did not.
We reject this argument. Initially, we recognize that plaintiff is correct in noting that this Court has approved of separate awards for scarring and disfigurement in the past. See, e.g., Buffinet v. Plaquemines Parish Comm'n Council, 93-0840, p. 20 (La.App. 4th Cir. 7/27/94), 645 So.2d 631, 644, writs denied, 95-0100, 95-0105, 95-0109 (La. 3/17/95), 651 So.2d 269, 270; Longman v. Allstate Ins. Co., 93-0352 (La.App. 4th Cir. 3/29/94), 635 So.2d 343, 355; Bernard v. Royal Ins. Co., 586 So.2d 607, 611 (La.App. 4th Cir.), writ denied, 589 So.2d 1058 (La.1991). However, the trial court is vested with discretion in constructing its charge to the jury and the verdict form submitted to the jury. Here, the trial court may have concluded that damages for plaintiff's scar need not have been itemized separately, but could be subsumed into the general damages award.
Regardless of the trial court's motivation, it was improper for the jury to include any amounts for scarring in the award for future medical expenses. We must reverse this award. However, we note that Mrs. Stark needs to undergo professional physical therapy to improve the strength in her left hand. This was a firm recommendation of the vocational evaluator that testified on her behalf. We thus find it appropriate to award her an amount sufficient to defray this expense.
At the time of trial, Mrs. Stark had received 18 physical therapy treatments at a cost of $1,080 (i.e., $60 per treatment). We also note that her therapy was restricted in duration because of the Stark's limited finances. Thus, we conclude that Mrs. Stark is entitled to $2500 for physical therapy. This amount should defray approximately 41 treatments at $60 per treatment. We will adjust the judgment accordingly.
Loss of Past and Future Wages
The jury awarded Mrs. Stark $35,000 for loss of income, past and future. NTC argues that this award is excessive in light of Mrs. Stark's past work history. We reject this claim.
With respect to past wages, the plaintiff bears the burden of proving the amount of the lost wages and the amount of *775 time missed from work as a result of the accident. Thibodeaux v. USAA Cas. Ins. Co., 93-2238, p. 14 (La.App. 1st Cir. 11/10/94), 647 So.2d 351, 360. "Past lost earnings are susceptible of mathematical calculation from proof offered at trial, and an award for this element of damages is not subject to the much discretion rule." Id., 647 So.2d at 360.
Prior to her accident of February 25, 1992, Mrs. Stark had an employment history that contained a variety of occupations. Included among these were insurance sales and waitressing. Mrs. Stark testified that she and her husband relocated to Louisiana in an effort to keep their family business of trash hauling operating year-round. At their prior location in Illinois, the business could not operate during the winter months. In preparation for their relocation, the Starks agreed that Mrs. Stark would attempt to obtain employment as a waitress in New Orleans, preferably during the evenings, so that she could assist her husband in developing their business. Mrs. Stark indicated that they believed waitressing was the best field for her to look into because it would offer a good income that would, because of tips, commence almost immediately after her finding a position.
Unfortunately, the Starks were never able to implement this plan because Mrs. Stark was injured almost concurrently with her arrival in New Orleans. Thus, from February 25, 1992, three weeks after relocating in New Orleans, until mid-June of 1993, Mrs. Stark was unable to work as a waitress due to her inability to use her left arm. She did, however, work intermittently at the Morial Convention Center in New Orleans helping assemble convention displays. Unfortunately, even this type of work placed too much strain on her left elbow and she had to discontinue it.
Mrs. Stark finally began working as a waitress approximately six weeks after her surgery. Between June of 1993 and November of 1993, she earned approximately $5900 in that capacity. This includes two two-week pay periods where she was unable to work full time because of lingering pain in her elbow. Excluding these two pay periods, Mrs. Stark averaged approximately $652 every two weeks as a waitress. Thus, for the period that she was unable to work as a waitress, which lasted approximately 68 weeks or 34 two-week pay periods, her lost wages total approximately $22,168. We find this to be a reasonable estimate of her lost past wages.
NTC maintains that Mrs. Stark was, in fact, employed during this time. NTC points to Mrs. Stark's own admission that she was answering the phone and doing light bookkeeping work for the family business. However, we do not interpret this as evidence that she could actually have been working as a waitress or in any other capacity. Reviewed in toto, the record amply demonstrates that Mrs. Stark was not a malingerer and was always anxious to return to work. Moreover, we can safely assume that even had she been employed during the evenings, she still would have been assisting her husband with the family business. We will not penalize her for carrying through with her intentions. Thus, we conclude that an award for $22,168 is proper for past lost wages.
As for loss of future wages, we note that such calculations "are not susceptible of proof to a mathematical or legal certainty." Bailes v. U.S. Fid. & Guar. Co., 512 So.2d 633, 643 (La.App. 2d Cir.1987). Therefore, "the trier of fact must be afforded much discretion in the determination of such damages where the evidence clearly shows that damage is proven but is not capable of proof to a mathematical certainty." Id. "The reviewing court may not substitute its judgment for that of the trial court absent a clear abuse of discretion." Champagne v. Hartford Cas. Ins. Group, 607 So.2d 752, 756 (La.App. 1st Cir.1992).
There is no such abuse here. Mrs. Stark's injury was to her dominant hand. She continues to suffer a 25% loss of strength in that arm, one which, according to her own doctor, can never be made whole because of the loss of muscle tissue resulting from the surgery. Although her injury does not appear to have substantially hampered her ability to wait tables, her elbow pains will *776 preclude her from doing other types of work that might offer greater financial rewards. We do not find that an award of $12,832 for lost of future wages is excessive.

CONCLUSION
For the foregoing reasons, we amend the trial court's judgment to find that Mrs. Stark was 40% at fault in her accident and, as amended, affirm that portion of the judgment. The damage award for past and future earnings is affirmed. The award for past and future medical expenses is amended to $8192.74. Mrs. Stark's recovery shall be diminished by her comparative fault. Accordingly, judgment is recast as follows:
IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that there be judgment in favor of plaintiffs, Janice Marie Stark and Carlos Stark, and against defendant, National Tea Company in the amount of Forty-Six Thousand Seven Hundred Sixty Five and 64/100 ($47,765.64) Dollars, representing 60% of the total award of Seventy-Seven Thousand Nine Hundred Forty-Two and 74/100 ($77,942.74) Dollars.

AMENDED AND, AS AMENDED, AFFIRMED.
JONES, Judge, dissenting in part and concurring in part.
I concur in the majority opinion in part. I agree that the trial court's judgment should be amended to assign plaintiff some comparative fault for her injuries and that the award for past and future medical expenses should be amended. Plaintiff approaches the area where Gross was working and thus assumes some of the fault for her injuries. However, I find that assigning plaintiff 40% comparative fault is excessive.
In this incident National Tea Company is clearly the primary tortfeasor. Gross left the aisle unsupervised after he dampened the floor. The aisle was not partitioned off and there was merchandise in the aisle. Plaintiff's assignment of fault should exceed no more than 5-10% in light of these facts.
NOTES
[1] Interestingly, the jury verdict form contained in the record appears to show that the jury initially awarded only $5,692.74, the exact amount of medical bills incurred by Mrs. Stark prior to trial. However, that figure was erased and was replaced with $12,000.