694 So.2d 528 (1997)
Veronica S. MEDICE
v.
DELCHAMPS, INC. and XYZ Insurance Company.
No. 96-CA-1868.
Court of Appeal of Louisiana, Fourth Circuit.
April 30, 1997.
*529 Jefferson R. Tillery, Elizabeth Slatten, Healy Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P., New Orleans, for Defendant/Appellee.
Catherine J. Smith, New Orleans, for Plaintiff/Appellant.
Before KLEES, ARMSTRONG and MURRAY, JJ.
ARMSTRONG, Judge.
This is a personal injury case involving a slip and fall of a shopper in a grocery store. The trial court, after a bench trial, held the defendant grocery store liable, awarded general damages of $3,000 plus stipulated special damages, and allocated 90% comparative fault to the plaintiff shopper and 10% fault to the grocery store. The plaintiff appeals as to the allocation of 90% fault and as to the quantum of general damages. The defendant does not appeal. We reverse the decision of the trial court in part, reallocate fault to 40% to the plaintiff and 60% to the defendant, and increase the general damages to $6,000.
Plaintiff, Ms. Veronica Medice, was shopping at a Delchamps grocery store on April 8, 1994. A Delchamps employee, Edward Sherman, was stripping some wax build-up from the floor of one of the aisles. This resulted in part of the floor of the aisle being wet. Mr. Sherman placed some cones in the aisle to warn of the wet floor. Ms. Medice entered the aisle and, while attempting to get some cookies from the shelf, slipped on the wet floor and fell. Mr. Sherman, who was still working in the aisle, did not see Ms. Medice fall but did see her getting up after the fall. The manager was called and an accident report was completed.
Ms. Medice felt back pain after her fall and so went to see a doctor, Dr. Jacqueline Cleggett-Lucas at Gulf Coast Medical Consultants, the same day as the accident, April 8, 1994. Dr. Lucas diagnosed Ms. Medice as suffering from contusion, lumbar strain and cervical strain. Ms. Medice underwent treatment with Dr. Lucas until July 1994 at which point she was recovered except for some minor back pain. Ms. Medice had a history of prior back injury, including an injury as to which she had not been discharged at the time of the April 8, 1994 accident at issue, and the trial court found that the April 8, 1994 accident aggravated a pre-existing injury. Ms. Medice had stipulated medical expenses of $903 and stipulated lost wages of $480.
The evident basis for the trial court's allocation of 90% comparative fault to Ms. Medice and 10% fault to Delchamps was the presence of the cones in the aisle. We agree that the cones gave enough of a warning of the wet floor to create some comparative fault on the part of Ms. Medice. But, as the trial court itself noted: "In a self-service food store, a merchant should expect customers to enter areas marked with cones when the customer wants an item in the area marked with cones". No attempt was made to actually bar shopper access to the wet area of the floor. Tapes or barricades could have been placed at the ends of the aisle, or in the aisle at the ends of the affected section of the aisle, in order to prevent shoppers from stepping onto the wet area of the aisle floor. A "Keep Off" sign also would have contributed to keeping shoppers off the wet area of the floor. As Mr. Sherman described the wax-stripping process, he ended it by dry-mopping *530 the stripped area, so that the stripped area would be expected to dry fairly quickly. Thus, closing off an aisle, or a portion of an aisle, until the floor was dry would not have presented any lengthy inconvenience. Further, even that limited inconvenience could be avoided, without exposing shoppers to wet flooring, by stripping the wax build-up when the store is closed.
The factors to be considered when allocating fault include those set out in the Supreme Court's Watson decision:
In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.
Watson v. State Farm Fire and Casualty Ins. Co., 469 So.2d 967, 974 (La.1985). As to the first factor, it is apparent that Ms. Medice's conduct involved inadvertence while Delchamps' conduct involved a decision to leave the wet floor area accessible to shoppers (but using cones to warn). As to the third factor, Delchamps' conduct of leaving the wet floor area open to shoppers did not seek any very significant objective. Blocking off the aisle, or a part of it, for a short time, was not such a great inconvenience to be avoided as to necessitate leaving a wet floor area accessible to shoppers. That is particularly so because even the minor inconvenience of blocking access for a short time could have been avoided by stripping the wax when the store was closed. As to the fourth factor, because Delchamps was in control of its own store, and had precise knowledge (through Mr. Sherman) of what floor areas were wet at what time, Delchamps had "superior capacity" relative to Ms. Medice with respect to the particular hazard involved here. As to the second factor, each party's conduct created about the same risk to the plaintiff. As to the fifth factor, no extenuating circumstances are apparent that would have required either party to have to proceed in haste, without proper thought. For example, the wax stripping was routine maintenance that could be dealt with by a standard operating procedure.
We also note that, in a self-service store, the shopper has a diminished duty to keep a lookout for hazards. "The duty to keep a lookout is diminished when shelved merchandise distracts a shopper". Perez v. Wal-Mart Stores, Inc., 608 So.2d 1006, 1008 (La.1992). A "normal shopper" will be busy "viewing the merchandise, not the floor". Id. This results from "the merchant's intentional attempts to draw the customer's attention toward merchandise on the shelves, thereby diminishing the attention that the customer pays to where he or she is walking". Stark v. National Tea Co., No. 94-CA-2633 (La. App. 4th Cir. 5/16/95), 655 So.2d 769, 773. We have observed that a "customer in a store is not held to the same standard of vigilance as would be necessary if traversing a jungle". Jones v. Hyatt Corp. of Delaware, No. 95-CA-2194 (La.App. 4th Cir. 7/26/95, 9/26/96), 681 So.2d 381, 392.
We recognize that the trial court's allocation of fault, because it is an issue of fact, Watson, 469 So.2d at 972, should be disturbed upon appeal only if it is clearly wrong or manifestly erroneous. E.g., Hines v. Remington Arms Co. Inc., No. 94-C-0455 (La.12/8/94), 648 So.2d 331, 335. But we recognize also that, although deference to the factfinder should be accorded, the courts of appeal still have a constitutional duty to review facts and determine whether the trial court's finding of fact is clearly wrong on the evidence. Ambrose v. New Orleans Police Dept. Ambulance Service, Nos. 93-C-3099, 3110, 3112 (La.7/5/94), 639 So.2d 216. If we find that the trial court made a "clearly wrong" allocation of fault, we "should adjust the award, but only to the extent of lowering or raising it to the highest or lowest point respectively which is reasonably within the trial court's discretion". Clement v. Frey, *531 Nos. 95-C-1119, 1163 (La.1/16/96), 666 So.2d 607 (emphasis added). In other words, the determination that the trial court's allocation of fault was clearly wrong does not authorize us to make a de novo reallocation of fault. Clement, supra.
In light of the facts as we have discussed them above, the Watson factors, and the substantive rules applicable to the duty of care of a shopper in a self-service store, and giving as much deference as possible to the trial court's allocation of fault, as per Clement, supra, we conclude that an allocation of fault to Ms. Medice of no more than 40%, and an allocation of fault to Delchamps of no less than 60% is necessary to bring the allocation of fault "reasonably within the trial court's discretion". Id. We base our conclusion in part upon the premise that, upon this record, more fault must be allocated to Delchamps than to Ms. Medice. The allocation of fault 60% to Delchamps and 40% to Ms. Medice provides a modest distinction which recognizes the greater responsibility of Delchamps.
As to our reallocation of fault, we also are guided by our decision in the analogous case of Stark v. National Tea Co., 94-CA-2633 (La.App. 4th Cir. 5/16/95), 655 So.2d 769. In Stark, an employee of the defendant grocery store clearly was visible to the plaintiff shopper while spraying a foam (presumably, some type of cleanser) onto the floor of an aisle. The foam was visible clearly on the floor. The plaintiff shopper slipped while getting something from one of the shelves. The jury found the defendant store 100% at fault and found the plaintiff shopper not at fault at all. We concluded the jury verdict was clearly wrong reallocated fault 40% to the plaintiff shopper and 60% to the defendant grocery. The risk in Stark was more apparent to the Stark plaintiff than the risk in the present case was to Ms. Medice. Yet, only 40% fault was allocated to the Stark plaintiff. Thus, by analogy to Stark, which is comparable on its facts to the present case, no more than 40% fault should be allocated to Ms. Medice.
We also believe that the trial court's award of $3,0000 general damages was clearly inadequate. We may not disturb the trial court's determination of the quantum of general damages unless the trial court has abused its discretion as to that issue. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La. 1993); Theriot v. Allstate Ins. Co., 625 So.2d 1337 (La.1993). Because of the uncertainty inherent in the issue of general damages, the ultimate determination by an appellate court of whether the trial court abused its discretion is a "judgment call". Clement, 666 So.2d at 609.
In the present case, Ms. Medice was treated for several months subsequent to her fall. She had medical expenses of $903 which is some indication of the severity of her injury. She sought medical attention promptly, and in fact was seen by Dr. Lucas the same day as the accident, and so gave a history of pain that began contemporaneously with the accident. Also, Ms. Medice already was suffering from a back injury, from which she had not fully recovered as of the date of the accident at issue in this case, and the aggravation of the prior injury apparently increased the pain and disability from which she suffered. See Pilet v. Schwegmann Giant Supermarkets, 559 So.2d 894, 898 (La.App. 4th Cir.1990).
On these facts, we believe that the lowest award of general damages that would not constitute an abuse of the trial court's discretion would be $6,000. See generally, e.g. Parker v. Winn-Dixie Louisiana, Inc., 615 So.2d 378 (La.App. 5th Cir.1993) ($7,500 in a slip and fall with several months of conservative treatment with medical expenses of $1,170); Turcich v. Baker, 594 So.2d 505 (La.App. 5th Cir.1992) ($5,000 general damages for mild to moderate cervical strain); Reese v. Winn-Dixie of Louisiana, Inc., 542 So.2d 68 (La.App. 3rd Cir.1989) (general damages of $5,000 for back strain), writ denied, 546 So.2d 1218 (La.1989); Jones v. Lingenfelder, 537 So.2d 1275 (La.App. 2d Cir.1989) (general damages of $7,000 for back and neck pain), writ denied, 539 So.2d 631 (La.1989).
For the foregoing reasons, the judgment of the trial court is reversed in part and we render judgment reallocating fault 40% to *532 Ms. Medice and 60% to Delchamps with general damages of $6,000 plus special damages as stipulated.
REVERSED IN PART AND RENDERED.
MURRAY, J., concurs with reasons.
MURRAY, Judge, concurring with reasons:
I agree that the allocation of fault by the trial court is manifestly wrong, applying the factors set out in Watson v. State Farm Fire & Cas. Ins. Co., 469 So.2d 967, 974 (La.1985) to the facts of this case. I also agree with the majority's conclusion that an allocation of fault to Ms. Medice of no more than 40% and an allocation of no less than 60% to Delchamps is necessary to bring the fault allocation reasonably within the trial court's discretion. Although Ms. Medice's fault herein appears to be less than that of the plaintiff in Stark v. National Tea Co., 94-CA-2633 (La. App. 4th Cir. 5/16/96), 655 So.2d 769, I cannot say that the majority is wrong for placing her fault at 40%, the same as that of the Stark plaintiff. For this reason, I respectfully concur.